LINDSAY and others, Appellants, vs. FRICKE, Respondent.

*November 9—December 4, 1906.*

*Sales: Breach of warranty: Conditions: Appeal and error: Pleading: Demurrer.*

1. In an action for the price of a traction engine defendant counterclaimed, alleging breaches of warranty. It appeared from the contract set out in a counterclaim that, if the defendant failed to settle for the engine as provided in the contract, the warranty became void. *Held*, that an allegation of the counterclaim that defendant never refused to make settlement for the engine was a verity on an appeal from an order overruling a demurrer to the counterclaim, and rendered unnecessary consideration of the question whether defendant was bound to make settlement if demanded.

2. In an action for the price of a traction engine an allegation of a counterclaim that there was a breach of a special warranty entitling the defendant to damages is not inconsistent with contract provisions to the effect that *all* warranties should be void if the engine was not settled for, where the counterclaim avers that the defendant never refused to make settlement.

3. A contract for the sale of a traction engine contained a special warranty as to its capacity, and also a general warranty respecting material and construction which made no mention of capacity, and was followed by provisions that notice of the failure of the engine to fill *"this"* warranty should be given the seller, and that continued possession by the buyer for ten days should be conclusive evidence of the fulfilment of the warranty. *Held*, that the provisions as to notice and the effect of retaining the engine had no reference to the special warranty.

APPEAL from an order of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

This is an action of replevin to recover possession of a traction engine delivered to defendant. The complaint alleges that on the 22d day of August, 1905, defendant entered into the following contract with plaintiffs:

"Dated at Newton, August 22, 1905.

*"Lindsay Brothers, Milwaukee, Wis.:* Please furnish or ship for the undersigned, on or about August 25th, 1905, to

C. H. Fricke, at Newton, Wis., the following machinery: One 18-horse Russell traction engine, with 18-inch road wheels with diagonal cleats, and one headlight, and 150 foot of 8-inch 4-ply gandy thresher belt. Without oil pump in place of lub. Also fixtures and free extras, as provided in current price list. We, the undersigned, agree to receive the above subject to the conditions named below, to pay the freight and charges thereon from Milwaukee, and further agree to pay to your order, on the arrival of the goods at the place above named, the sum of eight hundred and fifty dollars, as follows: Our note, due November 15, 1905, $850.00; and one 16-horse second-hand Rummely compound traction engine complete on board of cars at Newton, Wis. Notes to bear interest from November 15, 1905, at 6 per cent., to be given on your blanks, payable at Savings Bank, Manitowoc, Wis., and we agree to give as security a chattel mortgage on the goods purchased, and further: The above engine is to be guaranteed to pull a 36 x 60 Avery separator on the road or while threshing. As a condition hereof, it is fully understood and agreed: (1) That this order is given subject to the acceptance of Lindsay Bros., and that no promises, whether of agent or employee or attorney, in respect to the payments, security, or to the machinery named, will be considered binding unless made in writing and ratified by Lindsay Bros. (2) That title to said goods shall not pass until settlement is accepted by Lindsay Bros. (3) That any change of any one or more of these terms, or any addition to or alteration of this order, may be made by any one or more of us with the consent of Lindsay Bros., and that any and all of such changes or additions shall in no wise release us, or any of us, from liability of this order. (4) That the above articles are warranted to be of good material, well made, and, with proper management, capable of doing as good work as any similar article made in the United States. If said machinery, or any part thereof, shall fail to fill this warranty, written notice shall be given to Lindsay Bros., Milwaukee, Wis., and to the party through whom the machinery was purchased, stating wherein it fails to fill the warranty, and time, opportunity, and friendly assistance given to reach the machinery and remedy any defects. If the defective machinery cannot then be made to fill the warranty, it shall be returned immediately by the undersigned to the place where received,

and another furnished on the same terms of warranty, or money and notes to the amount represented by the defective machinery shall be returned, and no further claim be made on Lindsay Bros. Continued possession for ten days after first use shall be conclusive evidence that the warranty is fulfilled to the full satisfaction of the undersigned, who agree thereafter to make no further claim on Lindsay Bros., under this warranty. .In case any casting fail, through defect in its material, during the first season, such defective piece shall be replaced without charge, except freight or express charges; but on any claim for replacement of defective castings the defective piece shall be presented to Lindsay Bros., or to the dealer through whom the machinery was ordered, and shall clearly show the defects. Defects or failure in one part shall not condemn or be grounds for claiming renewal, or for the return of any other part. It is expressly agreed as a condition of this warranty, that the cylinder speed of threshers shall not exceed 1,200 revolutions per minute; that the driving of any independent stacker, or any other device not furnished with the thresher, from any part of same, shall invalidate this warranty as regards such thresher, unless such attachment shall be approved by Lindsay Bros., and such stacker be operated without change of speed, or impeding the operation of any part of the thresher. This warranty shall not include levers for horse powers, nor will any be replaced on account of breakage. All warranties to be invalid and void in case the machinery is not settled for according to above agreement, when delivered, or if this warranty is changed, whether by erasure, addition, or waiver. Warranty rendered void shall be restored only by an agreement in writing. Where special attachments, saws, or belting are ordered and furnished, the manufacturers' warranty only is extended.

"Postoffice, Manitowoc, Wch. Ave., 1802.

"Witness: F. Kohl.              C. H. FRICKE.     [Seal.]"

The complaint further alleges that the plaintiffs duly performed the contract on their part, delivered the property to defendant, and defendant took possession of the same and delivered to plaintiffs the second-hand engine; that defendant refused to give the note for $850 as required by the contract, and refused to make payment on November 15, 1905;

that before action plaintiffs duly demanded possession of the property so sold, which was refused.

Defendant answered, admitting that he entered into the contract, the demand and refusal to deliver the engine to plaintiffs, and denied generally the other allegations of the complaint. Defendant by way of counterclaim set up the contract with plaintiffs; the delivery of his second-hand engine; that plaintiffs under their contract guaranteed the engine furnished to be of sufficient power to haul, run, and operate defendant's separator; that defendant, before execution of said contract, required the following special warranty to be inserted therein: "The above engine is to be guaranteed to pull a 36 x 60 Avery separator on the road or while threshing"—and relied upon the same in making said purchase; that said engine was not powerful enough to run or operate his separator; that the engine delivered by plaintiffs to defendant was not in compliance with said warranty, and was not powerful enough to operate his separator; that defendant notified plaintiffs and their agent that said engine was not in compliance with the guaranty, and that plaintiffs sent a representative to defendant, who gave defendant instructions respecting the management of said engine, and claimed and represented that by following such instructions the engine would prove powerful enough and would comply with said warranty, and, relying upon such representations, defendant continued to use said engine and followed such instructions, but said engine remained and continued not powerful enough, and defendant again notified plaintiffs of such fact, and plaintiffs on September 11, 1905, sent two men, who claimed to be experts, and they endeavored to remedy the defects, but failed; that thereupon defendant again notified plaintiffs that he would not accept said engine, and that it was not as guaranteed, and offered to return the same; that plaintiffs again represented that said engine was powerful enough to haul, run, and operate defendant's separator, and

that they would place it in condition so to do, and, relying upon said representations, defendant continued to use said engine, and on September 22, 1905, plaintiffs sent another man, who claimed to be an expert and could put said engine in condition to comply with the warranty, and said man remained with defendant from September 22d to September 30th endeavoring to place said engine in condition and to make it comply with said warranty, but failed. The counterclaim further alleges:

"That upon said failure said defendant again notified said plaintiffs that he would not accept said engine, that it was not as represented and as guaranteed, and offered to return said engine, but plaintiffs again represented and claimed to defendant that said engine would be made powerful enough to haul, run, and operate said separator, and that they would make it so, and requested said defendant to continue to use it, and that defendant continued to use it until October 10, 1905, when plaintiffs again sent a man to the defendant to place the said engine in condition to be powerful enough to haul, run, and operate defendant's said separator, but said man did nothing with said engine, but told said defendant that, if said engine was remodeled by placing some more pipe into it, it would then be powerful enough to haul, run, and operate defendant's said separator. That immediately after that defendant again notified plaintiffs that he would not accept said engine, because it was not as represented and guaranteed, and because it was not powerful enough to haul, run, and operate defendant's said separator, and then defendant continued to use said engine to complete some jobs he agreed upon, and where the farmers had relied upon his promise to come and do their threshing, until the 14th day of October, 1905, upon which day he ceased to use said engine and has not used it since. That said engine, at the time of its delivery by plaintiffs to defendant, and at no time since said delivery, was as represented and guaranteed, but, on the contrary, was not as represented and guaranteed, and never was powerful enough to haul, run, and operate said defendant's separator while threshing grain. That the reason why he continued to use said engine was because the plaintiffs claimed and represented

to defendant that said engine was powerful enough and could be made powerful enough to haul, run, and operate his said separator, and, relying upon said representations, he believed that said plaintiffs would make said engine powerful enough to so haul, run, and operate his said separator, and for no other reason whatever. That soon after said October 14, 1905, defendant called upon the plaintiffs at the city of Milwaukee, Wis., and then and there again notified them that said engine was not as represented and as guaranteed; that it was not powerful enough to haul, run, and operate his said separator, and offered to return said engine, headlight, and belt to said plaintiffs, and then and there demanded of said plaintiffs an engine that was powerful enough to haul, run, and operate his said separator properly, as agreed in said. contract, but said plaintiffs refused to furnish said defendant another engine and still refuse so to do; that upon such refusal to furnish defendant another engine, one powerful enough to haul, run, and operate said separator, this defendant offered to return said engine to plaintiffs, and demanded of them the return of his own engine or the value thereof, but this the said plaintiffs refused to do and still refuse to do.     That up to this time said plaintiffs have failed, neglected, and refused to furnish to said defendant an engine powerful enough to haul, run, and operate his said separator, and have failed, neglected, and refused to return to said defendant his own engine by him delivered to them as hereinbefore alleged, or to pay the value thereof. That the property sold by said plaintiffs to said defendant, by reason of said engine not being as represented and guaranteed and not being powerful enough to haul, run, and operate defendant's said separator, was then and there worth less than the sum to be paid therefor, and less than it would have been worth if the capacity and condition it was warranted to be, by the sum of six hundred fifty dollars.     That, by reason of said engine not being powerful enough to haul, run, and operate defendant's said separator, said defendant lost much valuable time, and was greatly annoyed and inconvenienced thereby, and lost a great amount of business, all to his damage the sum of two hundred dollars.     That defendant never refused to make settlement with said plaintiffs, but always was ready, and is now ready, to make settlement with them, provided they furnish him the engine required by said contract.     That

by reason of the premises this defendant claims a lien upon said engine delivered him for the sum of six hundred dollars, the value of the engine delivered by him to plaintiffs, which said plaintiffs refused and still refuse to pay. That by reason of the premises this defendant was damaged and misled to his damage as follows: (1) Six hundred dollars, the value of his engine delivered to plaintiffs by defendant as part payment under said contract. (2) Two hundred dollars, the value of his time lost by reason of said engine not being as represented and guaranteed, and his annoyance, inconvenience, and loss of business. (3) Six hundred fifty dollars, the difference in the value of the property sold to defendant by plaintiffs, as it was at the time of the delivery and as it would have been had it been as represented and warranted. That no part of said damage has ever been paid by said plaintiffs to said defendant, and the whole thereof is now due and owing said defendant from said plaintiffs.

"Wherefore defendant demands judgment of this court, and against said plaintiffs: (1) That plaintiffs take nothing in this action. (2) That defendant have and recover of said plaintiffs the sum of fourteen hundred fifty dollars, damages as aforesaid, together with interest from August 22, 1905. (3) That defendant have judgment against said plaintiffs for the costs of this action."

The plaintiffs demurred to the counterclaim for want of facts sufficient to constitute a cause of action and because the cause of action stated was not pleadable as a counterclaim. The court below overruled the demurrer, with leave to plaintiffs to reply within twenty days on payment of $10 costs. From the order overruling demurrer this appeal was taken.

For the appellants the cause was submitted on the brief of *J. E. Wildish.*

*A. P. Schenian,* for the respondent.

KERWIN, J. The contention on the part of counsel for appellants to reverse the order overruling the demurrer to the defendant's counterclaim is that it appears from the counterclaim (1) that defendant failed to settle for the machine

as provided in the contract, and therefore all warranties became void; (2) that defendant failed to return the engine, but accepted it, and therefore has no claim for damages. The counterclaim, on demurrer, must stand or fall upon the allegations thereof. It is alleged therein that the defendant never refused to make settlement for the engine, and this allegation is a verity upon this appeal. Therefore all other questions discussed, as to whether defendant was bound to make settlement if demanded, need not be considered. It is alleged that the special guaranty inserted in the first part of the contract, to the effect that the engine is guaranteed to pull a 36 x 60 Avery separator on the road or while threshing, was so inserted in the contract at the special instance and request of the defendant, and that in making the contract of purchase he relied upon said guaranty. It is further alleged that this guaranty was broken, and that the engine was not capable of pulling the separator mentioned, in consequence of which defendant sustained damages. So it is very plain from the allegations of the counterclaim that there was a breach of this special warranty, entitling the defendant to damages, and it is not rendered void by the other clause in the contract to the effect that *all* warranties shall be void if the machinery is not settled for, because the counterclaim alleges that the defendant never refused to make settlement, which averment is consistent with other allegations of the counterclaim.

But it is claimed that it appears from the allegations of the counterclaim that the defendant never returned the engine, but, on the contrary, accepted it, and that under the contract he was bound to comply with the provisions requiring notice to be given and opportunity furnished to plaintiffs to remedy the defects, and, if not made to fill the warranty, the engine should be returned immediately, and that he failed to comply with this provision and accepted the engine, and therefore has no claim for damages. It is plain from

the allegations of the counterclaim and the terms of the contract referred to therein and set up in the statement of facts that the engine was sold with the special guaranty to the effect that it would pull a 36 x 60 Avery separator, and for a breach of this guaranty the defendant is entitled to damages, or, in case he has not accepted, he may rescind the contract, return the engine, and recover the consideration paid. But it is said by plaintiffs that under the contract defendant had no election; that the provisions of the contract respecting notice and return were exclusive and must be strictly complied with, and that defendant not only failed to comply with such provisions, but accepted the engine, and therefore has no remedy.

The question turns upon the construction of the contract of purchase. In addition to the warranty heretofore mentioned it contains a warranty to the effect that the article is of good material, well made, and with proper management capable of doing as good work as any similar article made in the United States, and that, if said machine shall fail to fill *"this"* warranty, written notice shall be given to the plaintiff and to the party through whom the machinery was purchased, stating wherein it failed to fulfil the warranty, and opportunity and assistance given to remedy the defects, and, if the machinery cannot then be made to fill the warranty, it shall be returned immediately and another furnished on the same terms of warranty or money refunded, and that continued possession for ten days after first use shall be conclusive evidence that the warranty is fulfilled. It is very plain that this warranty is entirely separate and distinct from the special warranty in the first part of the contract to the effect that the engine would pull the separator. This latter warranty makes no mention whatever of the capacity of the engine, and the conditions to be complied with clearly have no reference to the first warranty. In other words, it is only in case of a breach of the warranty respect-

ing being of good material, well made, and capable of doing good work that the defendant was obliged to give the notice and comply with the conditions specified in the contract, because by its language such conditions refer exclusively to this warranty, and not to the special warranty stated in the first part of the contract, to the effect that the engine is guaranteed to pull a 36 x 60 Avery separator on the road or while threshing. There is no allegation in the counterclaim that there was any breach of this latter warranty, but simply a breach of the first; and, there being no condition attached to the first warranty respecting notice or return, the ordinary rules of damages with regard to breach of warranty apply. It is very clear from the contract that the defendant was not obliged to give notice or return in case of breach of the first warranty specified in the contract, to the effect that the engine would pull the separator.

It is claimed by counsel for appellant that the allegations of the counterclaim show an acceptance of the engine. True, the counterclaim alleges that, after defendant discovered that the engine was not in compliance with the warranty and notice given that he would not accept it, he used it for a few days to finish up some work; but it also appears from other allegations that the reason he used the engine was that he expected plaintiffs would remedy the defects and make it comply with the warranty, as they had repeatedly promised and attempted to do. It is not altogether clear, upon the allegations of the counterclaim, whether defendant accepted the engine or not. If he did not, he had two remedies: either to rescind the contract because of breach of warranty and return the machine and recover consideration paid, or retain it and recoup his damages for breach of warranty. But it is unnecessary to determine upon this appeal whether the counterclaim shows an acceptance of the engine or not, and we do not so determine, because in any event the defendant, for a breach of the special warranty to the effect that the en-

gine was powerful enough to pull a 36 x 60 Avery separator, was entitled at least to recoup his damages, whether he was entitled to the other remedy or not.

It is unnecessary to discuss the cases referred to by counsel for appellant, because it is very plain that the facts in this case clearly distinguish it from the cases cited. Here the counterclaim is based upon a breach of a special warranty, without any conditions attached thereto, and therefore, whether defendant accepted the engine or not, he is entitled to recoup his damages. The conditions respecting the second warranty set out in the contract apply exclusively to that warranty and have no reference to the first. It follows, therefore, that the order of the court below was right and must be affirmed.

*By the Court.*—The order overruling the demurrer to the counterclaim is affirmed.