## MURRAY CO. v. PUTMAN.

(Court of Civil Appeals of Texas. Austin. Jan. 29, 1913. Rehearing Denied Feb. 26, 1913.)

1. SALES (§ 279*)—WARRANTY—RETURN OF GOODS.

Under a warranty that machinery sold was of good material and would perform well if properly operated, and that if it could not be made to fulfill the warranty, and the fault was in the machine, it might be returned and another substituted therefor which would fulfill the warranty, or receive a pro rata rebate on the purchase-money notes, and reserving the right to replace defective parts without condemning the machinery, the buyer could not tender it back and avoid paying his purchase notes where the fault was not in the machinery itself, but in the manner it was set up.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 783–792; Dec. Dig. § 279.*]

2. SALES (§ 279*) — WARRANTY — CONSTRUCTION.

A printed warranty on the sale of machinery that the seller, on request, would furnish a man to superintend the putting up of the machinery at an agreed rate per day, followed by a writing to the effect that a certain salesman would show how to put up the machinery without additional charge, was modified thereby only to the extent that the seller might furnish that salesman, instead of some other party; but the warranty still bound the seller to furnish a competent party to put up the machinery, with a guaranty that he would do his work in a proper manner.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 783–792; Dec. Dig. § 279.*]

3. SALES (§ 442*)—BREACH OF WARRANTY—DUTY TO REDUCE DAMAGES.

Where a buyer of ginning machinery, with warranty, could have handled all orders for ginning with his old machinery, he was not entitled to recover damages on account of inability to fill his orders, owing to the failure of the new machinery to comply with the warranty.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1284–1301; Dec. Dig. § 442.*]

4. TRIAL (§ 252*)—ACTION FOR BREACH OF WARRANTY—INSTRUCTIONS.

Where the evidence, in an action for damages for breach of warranty of cotton ginning machinery, was conflicting as to whether plaintiff's employés put up the machinery as defendant's representative had shown them, a requested instruction that if they failed to put up the machinery as the defendant's representative had shown them, by reason of which plaintiff was damaged, the seller would not be liable, should have been given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

Appeal from District Court, Navarro County; H. B. Daviss, Judge.

Action by C. A. Putman against the Murray Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded. See, also, 130 S. W. 631.

McClellan & Prince, of Corsicana, and R. G. Watson and J. J. Eckford, both of Dallas, for appellant. Richard Mays, of Dallas, for appellee.

### Findings of Fact.

JENKINS, J. On July 15, 1907, appellant, through its salesman, W. E. Ellison, sold to appellee, by written contract, two gin stands and some other gin machinery. Said contract, among other things, contained the following clause: "Warranty.—Said machinery is warranted to be good material, to perform well, if properly operated by competent persons. Upon starting, if the purchasers, at any time within ten days, are unable to make same operate well, telegraphic or written notice, stating wherein it fails to conform to the warranty, is at once to be given by the purchasers to the Murray Company, Dallas, Texas (and not verbally to some of its traveling men); and reasonable time shall be given to the Murray Company to send a competent person to remedy the difficulty, the purchaser rendering all necessary and friendly assistance to the Murray Company, which reserves the right to replace any defective part or parts; but such defective part or parts shall not condemn the machine to which it belongs. And if said machine cannot be made to fulfil the warranty, and the fault is in the machine, it is to be returned to place where received and then another, as soon as practicable, substituted therefor, which shall fulfil the warranty, or the amount of the purchase price credited on notes pro rata, or money paid thereon refunded pro rata, neither party in such case to have or make any claim against the other." Said warranty clause further provided that if at any time, at the request of the purchasers, the Murray Company should render assistance in operating the machine, or to remedy any defects therein, that the same was not to be considered a waiver or excuse for any failure of the purchaser or purchasers to fully keep and perform the conditions of this warranty, and that such assistance, if any, was to be rendered at the expense of the purchaser.

After setting out the amount to be paid for such machinery, and the dates when such payment was to be made, with clause with reference to deed of trust, said contract contained a subhead, "Service of men," which was as follows: "It is hereby expressly understood that the Murray Company, if requested, will furnish a man to superintend the erection of above machinery, for which ———— agree to pay, upon the completion of the erection of the machinery herein described, to the Murray Company, the sum of $4.00 per day for the time of said man while in transit to and from said job, and while engaged thereon, and, in addition thereto, the railroad fare and expenses of such man from factory to place of erection and return." Partly above and partly below the subhead "Service of men" is written, "W. E. E. will show how to set up goods without additional charge." "W. E. E." meant W. E. Ellison.

Said machinery was delivered, and W. E. Ellison superintended the erection thereof. It was not properly erected, by reason of

which it would not operate well. The Murray Company was notified of this fact, and sent at different times W. E. Ellison and two other of its employés to remedy the defect. The defect was not remedied during the season of 1907, and not entirely so during the season of 1908. Had appellee ginned all of the cotton which the evidence indicates would have come to him during the season of 1907, he would have ginned from 800 to 1,000 bales at a profit of $1 per bale. He ginned only 234 bales, on which he made no profit, but probably ginned the same at a loss. It was not alleged in appellee's petition that the machinery was in any wise defective; on the contrary, the evidence conclusively shows that the machinery was not defective, and that the only reason why it did not operate well was because it was not properly erected. Appellee recovered judgment for 1907, loss of profits, $706, expenses $682; for 1908, loss of profits, $550, expenses $250.

### Opinion.

[1] 1. Appellant assigns error upon the admission of testimony, and upon charges given and refused, upon the theory that the written contract herein provides that the measure of damages shall be the return of the machinery, and, if not substituted with other machinery which will fulfill the warranty, that appellee is to have a pro rata rebate on notes executed by him for the purchase money, and, inasmuch as the machinery was never returned nor tendered to appellant, that appellee is not entitled to recovery anything herein. This would be true if the failure of the gin to perform well or fulfill the warranty was the fault of the machine itself. This is the express language of the warranty; but, inasmuch as the alleged fault was not in the machine itself, we do not think that appellee, under this clause in the contract, could have tendered back the machinery and relieved himself from paying the notes executed therefor, for which reason we overrule all of said assignments.

2. Appellant objected to testimony as to damages claimed, for the reason that the same had not been pleaded with sufficient certainty. The petition was sufficient, in the absence of a special exception, and the court did not err in overruling the objection to the testimony.

[2] 3. Appellant also contends that the written portion of said contract with reference to setting up the machinery supersedes the printed portion, and that it was bound by said contract only to furnish W. E. Ellison to superintend the erection of said machinery, and that, as he did so, it is not responsible for the failure of said Ellison to properly erect the same. We construe said written portion of said contract to modify the printed portion only to the extent that appellant would furnish Ellison, instead of some other party, and that he should not be paid anything for said services; but

we think that when the company undertook to furnish anybody to superintend the erection of said machinery that it thereby undertook to furnish a competent party for such work, and guaranteed that he would do his work in a proper manner.

[3] 4. The court, in paragraph 8 of its charge, instructed the jury as follows: "You are instructed that if, under other instructions in this charge, you find that plaintiff, Putman, sustained any loss or damage on account of the failure, if any, of defendant, the Murray Company, to properly set up and place said machinery for proper operation, you are further instructed that it was the duty of plaintiff, Putman, to use the means at hand, and to exercise the diligence that a reasonable and prudent person would have exercised under the circumstances to avoid and prevent loss; and if you believe from the evidence that plaintiff, Putman, by the exercise of ordinary prudence and diligence, could have avoided and prevented said loss, or any part of said loss, then, in such event, you will find against plaintiff, Putman, for such loss, or part of loss." Appellant assigns error that the verdict of the jury is not supported by the evidence under this charge. We sustain this assignment. The evidence shows that Putman, during the ginning seasons of 1907 and 1908, had two other gins with a capacity of 16 bales per day. The total amount of cotton which would probably have been tendered to him for ginning during either of said seasons would not have exceeded 1,000 bales. The ginning season, as shown by the evidence, lasted about 100 days. Thus it appears that Putman, with the means which he had at hand, could have ginned at least the greater portion of the cotton which would have been tendered him. There might have been some days in which more than 16 bales of cotton would have been tendered him, but the evidence does not show this to be a fact.

[4] 5. Appellant asked the following special charge: "You are instructed that if you believe and find from the evidence that the employés of Putman failed to put up and erect said machinery as W. E. Ellison had shown them, and that by reason of said failure, and that thereby, said C. A. Putman incurred any damages and loss, you are instructed that for such the Murray Company would not be liable." The evidence was conflicting on this issue, for which reason this charge should have been given. Putman and some of his witnesses testified that the machinery was put up in the manner directed by Ellison. On the other hand, Ellison testified as follows: "On the 30th of August I showed them where to place the countershaft. * * * I showed them just where to put those pulleys. After I did that, I left there, and did not return until the 21st of September. They had not put up the countershaft when I left. * * * I looked at the countershaft, and found that it had

not been set up as I had directed. * * * I told Mr. Putman that was the reason he had the trouble: I told him that no man with a thimbleful of sense would be running a shaft like that. When he attempted to run like that, and put his belt on tight enough to run the brush, he would spring the shaft; the pulley would be out of line, and the belt would run off; then he would cut it, thinking it was not tight enough, and that would spring the shaft some more, and that was what caused the trouble."

6. Appellant assigns as error that there was not sufficient evidence to justify the finding for loss of profits, or for expenses during either the season of 1907 or 1908. We sustain this assignment. The evidence as to these matters is entirely too vague and uncertain to form the basis of a verdict.

For the reasons above given, the judgment of the trial court is reversed, and this case is remanded.

Reversed and remanded.