CHIQUITA MINING CO., LTD., A CORPORATION, APPELLANT, *v.* FAIRBANKS, MORSE & CO., A CORPORATION, RESPONDENT.

No. 3286

June 26, 1940.                    104 P. (2d) 191.

*Clifford A. Jones* and *A. P. G. Steffes,* for Appellant.

*McNamee & McNamee,* and *L. K. Vermille,* for Respondent.

## OPINION

By the Court, ANNAND, District Judge:

This case is before the court on appeal by defendant from an order of the trial court, dated March 13, 1939, granting plaintiff a new trial on the ground the verdict is against law. The cause was tried before a jury which returned a verdict for defendant in the sum of $8,500.

Fairbanks, Morse & Company, a corporation, commenced a claim and delivery action in the lower court against the Chiquita Mining Company, Ltd., a corporation, for the recovery of a certain Fairbanks Morse used engine and Diesel Electric Unit and accessories sold under the terms of a written agreement, or in case possession could not be had, for the value of the machinery alleged to be $7,271, together with damage for the detention of the property, and for costs.

In its complaint, the plaintiff in the lower court and the respondent here alleged the delivery of the machinery to defendant in accordance with and pursuant to the terms and conditions of the contract, a copy of which was attached to the complaint and made a part thereof.

The complaint alleged that defendant Mining Company agreed to pay to plaintiff the sum of $15,000, payable $5,000 in cash and the balance in twelve equal monthly installments beginning January 1, 1937, which installments were evidenced by twelve promissory notes in the principal sum of $833.33 each. The notes were executed by defendant and dated December 31, 1936.

Plaintiff alleged that defendant had paid the sum of $5,000 cash and also three of the promissory notes which became due January 1, 1937, February 1, 1937, and March 1, 1937, but had failed and refused to pay the nine remaining notes aggregating in their principal amount the sum of $7,500.

Plaintiff alleged that the said remaining nine notes, with interest, according to their terms, had become due and payable. That on the 4th day of November 1937 the plaintiff elected to declare the full amount of the

sums remaining unpaid, immediately due and payable and so notified defendant; that said defendant failed and refused to pay the same; that on December 5, 1937, the plaintiff demanded of defendant immediate possession of the machinery and material, but defendant failed and refused to deliver the same. The value of the machinery was alleged to be $7,271.

Plaintiff claimed as a reasonable value for the detention of the property, the sum of $50 per month.

Defendant Chiquita Mining Company, in its amended answer, admitted delivery of the machinery, the execution of the contract, the terms of payment and the payments made and the refusal of the defendant to pay the balance due. Defendant denied that plaintiff, according to the terms of the written agreement pleaded, had done or performed everything which by the terms thereof it had obligated itself to do and perform, and alleged that prior to the alleged defaults on the part of the defendant, plaintiff was in default, in that it had failed to do and perform certain obligations on its part as provided in the agreement.

Plaintiff Fairbanks, Morse Company, a corporation, being a nonresident of the State of Nevada, defendant filed a counterclaim, pursuant to section 8603 N. C. L. 1929, as amended in 1931, chapter 148, alleging that the sales contract provided that the engine specified therein would be tested by plaintiff at its factory before shipment and that the engine would be placed on a test block in plaintiff's factory and subjected to a full rated brake horsepower test run and all adjustments made before shipment.

Defendant claimed that the engine was not so tested, thereby breaching the contract and that the damages claimed by defendant were the proximate result of such breach.

Defendant claimed special damages for certain repairs, labor and expense caused by shut-down of machinery, and general damages in the total sum of $7,712.39.

The case was tried before a jury and the jury found in favor of the defendant Chiquita Mining Company and fixed the damages in the sum of $8,500.

Judgment was entered on the verdict and the plaintiff filed its motion for a new trial. The trial court granted plaintiff's motion for a new trial on the ground that the verdict was against law. From this order, defendant appealed.

The rights and liabilities of the plaintiff and defendant depend upon the terms of the contract, a copy of which was attached to the complaint. The contract is a printed form furnished by plaintiff, Fairbanks, Morse & Company.

The plaintiff agreed to furnish and deliver to defendant one Fairbanks Morse (used) model, describing it by number, a Diesel electric unit with switchboard and accessories conforming with attached specifications.

The company agreed to deliver the machinery f. o. b. location at mine near Goodsprings, Nevada.

Paragraph 2 of the agreement provided: "The Engine specified herein shall be tested by the Company at its factory before shipment and the Company guarantees said engine shall develop 350 actual horsepower at such test."

Paragraph 3(a): "When engine is unloaded and transported to foundation and preparations are completely ready for such erection, the Company shall, (at request of the Purchaser), furnish a competent Engineer, who shall superintend the erection and test of the machinery, do all work requiring skilled labor and instruct Purchaser's operator on the operation and care of the machinery. This service shall be furnished at the expense of Fairbanks, Morse & Company and shall include labor for dismantling present installation for hauling from Atolia to Goodsprings, Nevada. Purchaser to furnish board and lodging at Chiquita Mine for erector."

The following paragraph provided, in part, that:

"When property installed the Company guarantees that at a test to be conducted at the time and in the manner hereinafter set forth, the machinery herein specified will operate successfully, at," (then follows the specifications of consumption of fuel oil at full load and fractions, indicating pounds per brake horsepower hour). Under guarantees of duty, the contract provided the test shall be made only if required by the purchaser, and shall consist of three eight-hour days' operation and shall be conducted by the engineer of the company.

The contract provided if at the end of the three days' test the machinery successfully operates in accordance with the guarantees of duty, the purchaser shall give to the engineer of the company a written acknowledgment that a successful test has been made, demonstrating that said machinery will operate successfully as provided in said guarantees of duty.

The following paragraph provided if purchaser failed or refused to give such acknowledgment, the purchaser shall immediately notify the company in writing setting forth in what particulars the purchaser claims the machinery to be defective. If it shall appear to be beyond the power of the company to make the machinery perform according to guarantees, within a reasonable time, then the company shall remove the machinery at no expense to purchaser and refund all purchase money paid thereon.

The company guaranteed the machinery to be well made of good material and in a workmanlike manner and provided if any parts of said machinery furnished should fail through defect in workmanship or material and written notice of such failure be given, the company would replace such defective parts free of charge, but the company would not be liable for repairs unless made with its consent.

"The Company shall not be liable for damages or delays caused by such defective material or workmanship and it is agreed that, excepting its obligation to

remove said machinery in the event of its inability to make said machinery operate at the test as hereinabove described according to said Guarantees of Duty, *the liability of the Company under all guarantees either express or implied, is specifically limited to the replacement free of charge F. O. B. its factory of parts failing through defect in workmanship or materials within the time and in the manner aforesaid."*

At the trial the defendant based its defense upon a claim that plaintiff had not done and performed everything which by the terms of its agreement in writing it was obliged to do and perform, namely, that the engine specified would be tested by plaintiff at its factory before shipment; that the engine would be placed on a test block at the factory and subjected to a full-rated brake horsepower test run and all adjustments properly made before shipment, claiming that this breach of the contract caused defendant damages which resulted from such breach.

The evidence at the trial disclosed the fact that James J. Smith, vice president of defendant mining company, signed the contract and he knew that the machinery was a used model which was to be dismantled from its location at Atolia, California, and installed at Goodsprings, Nevada.

According to the evidence, the machinery was installed on the cement base constructed by the defendant mining company and the test run made as provided in the agreement. That the vice president of the company was present at the test and accepted the machinery for the mining company.

On cross examination James J. Smith testified in part as follows:

"Q. But they did make a full test on it, didn't they? A. Yes.

"Q. And they ran it continuously for twenty-four hours during that time? A. I don't remember that they shut it down after they started.

"Q. You mean after the engine was started you don't remember that it was shut down? A. No, I don't, I wasn't there continuously.

"Q. Well you were there on February 18th when Mr. Carter and Milligan left there? A. Yes I was.

"Q. Do you remember that the engine was turned over to you that day? A. Yes, I do.

"Q. And it was accepted by you? A. It was.

"Q. And you signed a receipt? A. I did."

According to testimony of Mr. Smith, the first time the engine was shut down after February 18, 1937, was in July 1937, and that was for the purpose of a clean-up.

The payments on the machinery were made for the months of January, February, and March 1937.

It appears from the testimony that there was a shutdown in October and another in November.

On November 4, 1937, the plaintiff elected to declare the full amount of the sums remaining unpaid, immediately due and payable and so notified defendant, and on December 5, 1937, demanded immediate possession of the machinery.

According to a copy of a letter dated November 27, 1937, attached to defendant's answer, Fairbanks, Morse & Company was notified through its attorney to the effect that the letter confirmed the substance of a recent conversation concerning the Diesel engine sold to the mining company. The letter claimed the engine had not been properly installed and stated: "The things which I personally was able to observe with my senses, which were such as not to require expert knowledge to ascertain, plus the clear and common sense explanation given me, conclusively proved to me that the condition found by Mr. Wallace, when he made his recent examination, had existed since the engine commenced to run after its installation. I refer particularly to the misalignment of the crank shaft."

Counsel for respondent, plaintiff in the lower court, contends that the provision in the contract to the effect

that plaintiff would test the engine at its factory before shipment and properly make all adjustments before shipment, were warranties and not conditions, as contended by defendant.

■ "A warranty, properly so called, can only exist where the subject-matter of the sale is ascertained and existing, so as to be capable of being inspected, at the time of the contract * * *." "But where the subject matter of the sale is not in existence, or not ascertained, at the time of the contract, an engagement that it shall, when existing or ascertained, possess certain qualities, is not a mere warranty, but a condition, the performance of which is precedent to any obligation upon the vendee under contract, because the existence of these qualities, being part of the description of the thing sold, becomes essential to its identification, and the vendee cannot be obliged to receive and pay for a thing different from that for which he contracted." Cited in Carleton et al. v. Lombard, Ayres & Co., 72 Hun 254, 25 N. Y. S. 570, 573.

■ The provision in the contract to dismantle the engine from its location at Atolia, California, install it at Goodsprings, Nevada, and run the test, was a guarantee which was fulfilled and was not a condition intended to survive its acceptance and give the purchaser further time for trial and examination.

Section 6749 N. C. L. 1929, uniform sales act, subparagraph (3): "If the buyer has examined the goods there is no implied warranty as regards defects which such examination ought to have revealed."

Section 6783 N. C. L. 1929 provides: "In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or sale. But, if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time

after the buyer knows, or ought to know, of such breach, the seller shall not be liable thereunder."

The contract between plaintiff and defendant provided that after the test of the machinery, if the machinery be defective the purchaser shall immediately notify the company in writing setting forth in what particulars the machinery was defective.

The record shows that the letter sent to the attorney for Fairbanks, Morse & Company setting forth the defects was dated November 27, 1937; after the plaintiff company had declared a default in the agreement.

The machinery was accepted by written acknowledgment in February 1937, and used continuously until July 1937, when it was shut down for a clean-up.

The subject matter of this sale existed at the time of the signing of the contract. It was inspected and accepted and no complaint was made that the engine was not tested at the factory.

■ The defendant cannot rely on an implied undertaking that the goods sold shall be reasonably suited to the uses for which the seller knew they were bought, for here it appears that the defendant actually used the machinery for the purpose for which the machinery was purchased.

■ There can be no condition the performance of which is precedent to any obligation upon the purchaser in this contract. The warranties or guarantees are all expressed in the contract in the following language: "and it is agreed that, excepting its obligation to remove said machinery in the event of its inability to make said machinery operate at the test as hereinabove described according to said guarantee of duty, the liability of the company under all guarantees either express or implied, is specifically limited to the replacement free of charge F. O. B. its factory of parts failing through defect in workmanship or materials within the time and manner aforesaid."

In the case of A. B. Farquhar Co. v. Hardy Hardware

Company, 174 N. C. 369, 93 S. F. 922, 925, in construing a contract for the sale of machinery, allowing a week's trial and requiring notice of any defect to be given the seller with opportunity to make the machinery as represented, or payment refunded, the court said: "The defendant should have complied with the plainly expressed terms of the contract, and pursued the course therein indicated, as they had solemnly agreed to do. We cannot help them when they fail to help themselves, for the law lends its aid to the vigilant and denies it to those who sleep upon their rights. Parties should assert their rights in due season and according to their own stipulations, where they claimed under a contract."

In the case of Murray Co. v. Putman, Tex. Civ. App., 1913, 154 S. W. 245, cited by counsel for appellant, the plaintiff did not ask for damages for defects in the machinery but for damages caused by faulty installation and received a judgment in the lower court which was reversed and remanded by appellant court.

Lindsay v. Fricke, 130 Wis. 107, 109 N. W. 945, cited by appellant, a case where machinery was sold under a special guarantee that it would pull a 30 x 60 Avery separator. In addition to this guarantee, it contained one to the effect that the article is of good material, well made, and with proper management capable of doing as good work as any similar article made in the United States, with a provision if said machine shall fail to fill this warranty, written notice shall be given to vendor, and an opportunity given to remedy the defects.

There was no claim of a breach of this latter warranty, but simply a breach of the first, and, there being no condition attached to the first warranty respecting notice or return, the court held the ordinary damages with regard to breach of warranty apply, but not where right of return was provided.

In the case now before this court there is a claim for damages on a guarantee with a condition attached respecting notice in case of failure to perform.

. There is no contention by appellant that the engine would not develop 350 actual horsepower, nor that it did not comply with the guarantee specified in the contract at the time of the fuel consumption test provided.

■ When a party makes a contract and reduces it to writing, he must abide by its terms as plainly stated therein.

■ The agreement between plaintiff and defendant herein does not admit the consideration of a duty or liability by implication of law, as the express agreement between the parties limits the liability under all guarantees, either express or implied, to the replacement of parts failing through defect in workmanship or material.

There is no allegation in the pleadings of defendant of fraud or that defendant relied upon the representation of an agent of the plaintiff company that the engine was properly installed. No claim was made by defendant for damages in the failure of plaintiff to replace defective parts.

The contract expressly provided that it contained all the agreements between the parties and was accepted by defendant with the definite understanding that there were no verbal agreements or understandings changing or modifying it.

■ The supreme court of this state in Gage v. Phillips, 21 Nev. 150, 26 P. 60, 61, 37 Am. St. Rep. 494, held: "When parties reduce their contract to writing, all oral negotiations and agreements are merged in the writing, and the instrument must be treated as containing the whole contract, and parol proof is not admissible to alter its terms, or to show that, instead of being absolute, as it purports to be, it was in reality conditional, unless the party attacking the instrument can establish fraud or mistake in its execution."

It is well settled, by a long line of decisions of this court, when parties reduce their contract to writing, all oral negotiations and stipulations are merged therein.

■ The acceptance of the engine is shown by an independent instrument in writing. If any defect existed

at the time of the installation of the machinery, this was waived by defendant.

■ The parties to the contract having by express terms negated and excluded all implied warranties, the defendant cannot claim the benefit of such and is bound by the limitations expressed in the written contract.

■ The verdict of the jury was in excess of the amount of damages claimed by defendant. It appears that the verdict was reached without reference to the pleadings, the evidence and the charges of the court considered together and construed as a whole.

Therefore, the order of the court granting a new trial is affirmed.