Stephen A. BOGGIANO and Meyer Hessel,
doing business as Boggiano & Hessel
(Plaintiffs), Appellants,

v.

E. V. THIELECKE (Defendant), Respondent.

No. 30168.

St. Louis Court of Appeals.
Missouri.

July 21, 1959.

Motion for Rehearing or to Transfer to
Supreme Court Denied Aug. 24, 1959.

Boggiano & Hessel, Stephen A. Boggiano, St. Louis, for appellants.

Jerome F. Duggan, Sidney W. Horwitz, Dubinsky & Duggan, St. Louis, for respondent.

ANDERSON, Judge.

The plaintiffs, partners engaged in the practice of law in the City of St. Louis, brought suit on May 25, 1956, against defendant for fees for legal services rendered in an equity suit brought in the Circuit Court of the City of St. Louis by Edith L. Munday against the defendant. In said equity suit Miss Munday sought partition of certain real estate located in the City of St. Louis, St. Louis County, and St. Francois County. In said suit Miss Munday also sought an injunction to prevent defendant from interfering with the management of the properties during the proceedings, the appointment of a receiver to take charge of said real estate and collect rents, an accounting, and other equitable relief. In the first count, plaintiffs alleged the reasonable value of the services rendered in the equity suit was $20,000. The second count of plaintiffs' petition alleged an agreement between the parties whereby the sum of $28,697.30, being part of an amount allowed defendant in said equity suit in partial distribution, would be deposited with the Clerk of the St. Louis Circuit Court with the understanding that it would remain on deposit until the fee due the plaintiffs for their services was determined, and that the amount so determined would be paid out of said fund. The prayer of the second count was that the fee due plaintiffs be determined at $20,000, with interest from November 12, 1954, and that plaintiffs have judgment in said amount payable out of the sum on deposit with the Clerk.

On November 10, 1956, the defendant filed his answer to said petition. The cause was set for trial on February 4, 1957, on which date defendant filed a counterclaim. In said counterclaim it was alleged that on October 15, 1954, the court passed on seven motions in the Munday case, among which was one for partial distribution which the court sustained. In the order sustaining said motion the Special Commissioner was directed to pay to defendant the sum of $35,000, said payment to be made to defendant and Meyer Hessel, his attorney. It was then alleged that the order, in so far as it directed payment to defendant and Meyer Hessel, was void for the reason that the latter had no interest in said fund. It was further alleged that defendant requested Meyer Hessel to file motions for rehearing as to the seven matters ruled on, which Meyer Hessel wrongfully refused to do, thereby committing a breach of duty as defendant's counsel; that the said Meyer Hessel wantonly, wilfully and wrongfully permitted the time to lapse within which a motion for rehearing could be filed or an appeal taken from said order of partial distribution; that Hessel neglected to inform defendant of the consequences of the failure to file a motion for rehearing as to said order; that plaintiffs knew they had no lien or claim of any sort against said sum of $35,000; that as a result of said order the Special Commissioner could not and did not pay to defendant said sum, due to plaintiffs' refusal to endorse the cashier's check tendered by the Special Commissioner which was made payable to defendant and Meyer Hessel, unless defendant would pay the amount of fees claimed by plaintiffs to be due them, which refusal was a wilful, wanton and wrongful breach of duty to their client, the defendant.

It was further alleged that plaintiffs thereafter filed a petition in the equity suit for an allowance of a fee in the sum of $20,000 to be declared a lien on the $35,000 fund belonging to defendant and held by the Special Commissioner; that plaintiffs well knew they had no such lien and were not entitled to receive any allowance for attorneys' fees from defendant by order of the court in the Munday case; that defendant retained counsel to oppose said allowance and was compelled to seek relief by an appeal to the Supreme Court from a judgment in plaintiffs' favor, which appeal was successful—the Supreme Court holding that plaintiffs had no lien on said fund. It was then alleged that in opposing said petition of plaintiffs the defendant was compelled to

pay an attorney's fee of $2,000 and expend the sum of $335 for incidental expense in connection therewith.

The counterclaim further alleged that defendant thereafter filed three motions in the Munday case requesting the court to direct the clerk to pay to him or his assigns the funds placed by the Special Commissioner in the registry of the court; that plaintiffs filed a motion in said cause in opposition to defendant's motion, knowing full well they were not parties to the litigation, that they had no lien on said funds, and that the court was without jurisdiction to entertain their motion; that their said motion was based on an alleged oral agreement obtained from defendant under duress, which agreement plaintiffs well knew was not properly a part of the case of Munday v. Thielecke but was the basis of an independent cause of action against defendant; that defendant was compelled to employ counsel to secure a release of said fund and to oppose plaintiffs' attempt to hold said fund in the registry of the court; that defendant's attorneys successfully opposed the efforts of plaintiffs, as aforesaid, and secured an order directing payment of said fund to defendant or his assignees, in accordance with defendant's motion; that plaintiffs appealed from said order making it necessary for defendant to employ counsel to oppose said appeal; that said counsel filed a motion in the Supreme Court to dismiss said appeal, which motion was still pending; that the actions on the part of plaintiffs were for the purpose of harassing defendant and to prevent him from securing possession of the monies that the Supreme Court had previously decided belonged to him; that he had incurred legal expense in opposition to plaintiffs' actions in the sum of $1,000, and would thereafter incur attorneys' fees in the amount of $1,500; and that he would incur an expense for printing briefs, etc., in an additional sum of $150; all to his damage in the sum of $2,650.

It was further alleged that defendant was entitled to $3,932.46 interest at 6% on the funds withheld from October 15, 1954,

as damages for the loss of the use of said funds during said period. It was further alleged that the plaintiffs wilfully, wantonly and wrongfully breached their duty to defendant in permitting the order of October 15, 1954, to stand instead of having it amended so that the $35,000 allowed defendant would be payable only to defendant; in demanding thereafter that they be paid their attorneys' fees from said fund before they would permit the balance to be paid defendant; in filing an application for attorneys' fees in the Munday case; and in seeking a lien against said fund. It was alleged that plaintiffs further breached their duty to defendant by making an appeal necessary from the order allowing plaintiffs $20,000 and declaring it a lien against said $35,000; and harassing defendant by their appeal presently pending in the Supreme Court. Defendant prayed judgment against plaintiffs for a total of $4,500 attorneys' fees and $485 expense allegedly incurred by him; also for $3,932.46 interest on the fund in possession of the clerk; and $10,000 punitive damages.

In plaintiffs' amended answer to defendant's counterclaim the judgment on Count I and the decree on Count II of plaintiffs' petition were pleaded as res judicata, said answer averring that the judgment and decree finally determined that plaintiffs properly performed services for defendant and did not violate any duty or obligation to defendant.

The trial court ordered separate trials of the petition and counterclaim. There was a trial before a jury of the issues raised by Count I of plaintiffs' petition, which trial resulted in a verdict and judgment, on February 13, 1957, in favor of plaintiffs for $17,500. This judgment is final. Subsequently, there was a trial of Count II of plaintiffs' petition. This trial was in the equity division of the court and resulted in a finding that the parties had entered into a valid agreement under which the sum of $28,697.30 was paid into the registry of the court with the understanding that any fee due to plaintiffs would be paid out of said

fund when the amount thereof was determined, and that in the trial under Count I of the plaintiffs' petition plaintiffs obtained judgment in the sum of $17,500. The judgment directed the clerk to pay plaintiffs that amount, with interest and costs, out of the fund in his possession. This judgment was entered on September 9, 1957, and has become final. The trial of the counterclaim began on March 24, 1958, and resulted in a verdict and judgment for defendant in the sum of $3,335. Plaintiffs have appealed from said judgment.

The evidence established that Edith L. Munday and defendant Thielecke had for many years been associated in the business of real estate speculation. They had accumulated various real estate holdings of a value in excess of $150,000. In May, 1952, Miss Munday brought suit against defendant in the Circuit Court of the City of St. Louis to dissolve their partnership and partition their property. An accounting was also sought, together with an injunction to prevent Thielecke from interfering with her real estate business. The defendant employed Meyer Hessel of the law firm of Boggiano and Hessel to represent him in that proceeding. Mr. Hessel's services in that connection extended over a period of about two and one-half years.

On October 14, 1954, there were seven motions on the docket to be heard in Munday v. Thielecke. Hessel had previously advised defendant by letter of the necessity of preparing for the hearings on these motions. The defendant refused to discuss these motions with Hessel or to make any preparation in connection with the hearings. On October 14, 1954, the parties appeared in Division No. 3 of the Circuit Court where the motions were pending. At that time defendant told Hessel to say nothing and that he would address the court. When the matters were called for hearing defendant asked the court for additional time within which to "hire additional counsel or other counsel." Defendant testified that he was "pretty well fed up with Mr. Hessel,"

although he did not tell Mr. Hessel at the time that he did not want him to further represent him. On cross-examination, defendant stated: "I didn't want to be represented by him on those motions. * * * I merely asked the Judge for a new setting until I could employ either Mr. Schneider or someone who I subsequently would find." The court denied defendant's request for a continuance, stating that the hearing would continue. Defendant then walked out of the courtroom. A hearing was had on all the motions and a decision rendered that day on each motion. Hessel advised Thielecke by letter dated October 18, 1954, of the results of the hearings on the motions and informed him that, in view of the record and the fact that they had offered no evidence, he saw no basis for motions for rehearing and none would be filed.

One of the motions heard was filed by counsel for Miss Munday and sought a partial distribution of $35,000 to each of the parties out of funds held by the Special Commissioner. The court sustained that motion and directed the Special Commissioner to issue his check payable to the order of Miss Munday and her counsel in the amount of $35,000, and another check payable to defendant and his counsel in the amount of $35,000. Defendant testified he was opposed to any partial distribution, stating that he wanted to get all of the parties' records into court before any distribution was made.

On October 24, 1954, defendant mailed a letter to Mr. Hessel directing him to prepare and file before the close of the court's business on Monday, October 25, a motion for rehearing of all seven motions passed on by the court on October 15, 1954. The letter further stated: "If you continue to refuse to obey this direction and do not file this motion Monday next, which is the last day of the ten days in which to proceed with the completion of the record, you are invited as of now to withdraw immediately." Hessel did not file such motions. At the time defendant wrote this letter he did not know that the order of

partial distribution provided that payment should be made to the parties and their attorneys.

On November 12, 1954, defendant appeared at Hessel's office accompanied by Edward C. Schneider, an attorney. At that time defendant wanted to obtain from the Special Commissioner a sum amounting to approximately $6,300, out of the $35,000 allowed defendant, to be used in closing the purchase of two parcels of real estate which defendant had purchased from the Special Commissioner. There was a discussion of the release of this money and the fees to be paid Boggiano and Hessel. According to defendant's testimony Hessel wanted a $6,500 fee for his services and would not sign the check until the matter of plaintiffs' fees were determined. Defendant refused to pay a $6,500 fee. After some discussion it was agreed between the parties that the sum of $6,300 would be released and the balance of the fund would be retained by the Special Commissioner in the form of a check payable to Thielecke and Hessel until plaintiffs' fees were determined.

On November 12, 1954, Hessel wrote the following letter to the Special Commissioner:

"Mr. E. V. Thielecke and Mr. Edward C. Schneider, attorney, were in my office today with respect to closing of the two purchases made by Mr. Thielecke at the Special Commissioner's sale. It is my understanding that Mr. Thielecke will require the sum of sixty-three hundred and two dollars and seventy cents for this purpose. In order that Mr. Thielecke will not be prevented from closing these two purchases, it is agreeable to me for you to have the thirty-five thousand dollar bank check which you are holding as a partial distribution payable to Mr. Thielecke and myself cancelled, and in lieu thereof have two checks issued, one payable to Mr. Thielecke, in the amount of sixty-three hundred and two dollars and seventy cents, and the other

payable to Mr. Thielecke and myself in the amount of twenty-eight thousand six nine seven thirty. (sic) It is also agreeable to me for you to deliver the six thousand three hundred and two dollars and seventy cent check to Mr. Thielecke."

Thereafter, Thielecke obtained from the Special Commissioner the check for $6,302.70.

Thereafter, Boggiano and Hessel filed a petition in Munday v. Thielecke praying an allowance of attorneys' fees. The court sustained this motion and allowed Boggiano and Hessel attorneys' fees in the sum of $20,000. Defendant filed a motion for rehearing, which was by the court overruled. The defendant then appealed to the Supreme Court. The Supreme Court, on March 12, 1956, reversed the order of allowance on the ground that the trial court had no authority under Section 528.530 RSMo 1949, V.A.M.S., to make an allowance of attorneys' fees to a respondent's attorneys in a partition suit, and that plaintiffs had no attorneys' lien under Section 484.130 RSMo 1949, V.A.M.S., since no funds or property came under the jurisdiction of the court as a result of their efforts. Munday v. Thielecke, Mo., 290 S.W.2d 88. Defendant testified that in connection with this matter he paid an attorney's fee of $2,000 and expended the sum of $335 as incidental expense in prosecuting the appeal.

While the above appeal was pending the fund represented by the check being held by the Special Commissioner was, by agreement, deposited into the registry of the court under a stipulation that provided it was deposited "for the benefit of said parties as their interest may hereafter appear, subject to the further order of this court, provided that said Meyer Hessel shall retain all lien rights and interest in and to said fund as he may be found to have heretofore had in and to said cashier's check prior to its cancellation and the payment aforesaid." Subsequently, $1,700 of this fund was paid under an assignment to the

law firm of which Mr. Lamkin was a member. Certain court costs were also paid out of this fund. At the time of the trial below there was on deposit in the registry of the court $26,910.45.

After the reversal by the Supreme Court of the allowance to Boggiano and Hessel, defendant filed a motion in Munday v. Thielecke requesting that the court direct the clerk to pay to him the fund deposited in the registry of the court. The plaintiffs filed a motion opposing this payment, alleging the agreement between the parties— that the fund be retained by the clerk until their fee was determined and paid out of said fund. The court sustained defendant's motion and directed that said fund be paid to him. The plaintiffs appealed from that order to the Supreme Court. This appeal was dismissed by the Supreme Court on January 16, 1958, for failure to comply with the rules of that court. While that appeal was pending a trial was had on Count I of plaintiffs' petition, resulting in a verdict and judgment on February 13, 1957, for plaintiffs in the sum of $17,500. There was also a trial on Count II of the petition which, on September 9, 1957, resulted in a decree in favor of plaintiffs. By said decree the clerk was directed to pay said plaintiffs the $17,500 judgment out of the funds on deposit in the registry of the court.

At the close of the evidence plaintiffs filed a motion for a directed verdict, which was denied. After the verdict, which was in defendant's favor in the amount of $3,335, plaintiffs filed a motion for judgment in accordance with their motion for a directed verdict. This motion was denied. Plaintiffs thereafter, in due time, appealed from the judgment.

Appellants contend that the trial court erred in denying their motion for a directed verdict in their favor, filed at the close of all the evidence. In their motion for a directed verdict it was averred:

"All issues set out in the counterclaim have been decided and are res judicata as the result of the judgment of this court, Division No. 9, entered on Count I of the petition and as a further result of the decree of this court, Division No. 3, entered on Count 2 of the petition, for the following reasons, among others:

"A. The judgment and decree in effect finally determined that the plaintiffs properly performed services for said defendant and did not violate any duty or obligation to him."

■ It is universally held that any matter in issue directly adjudicated, or necessarily involved, in the determination of an action in which a judgment is rendered, is conclusively settled by the judgment therein and cannot again be litigated between the parties. In re McMenamy's Guardianship, 307 Mo. 98, 270 S.W. 662; Boillot v. Income Guaranty Co., Mo.App., 124 S.W. 2d 608.

■ A valid judgment for the plaintiff operates to bar not only defenses interposed and adjudicated, but also those which were available and might have been raised. United States ex rel. First Nat. Bank of Cape Girardeau v. Lufcy, 329 Mo. 1224, 49 S.W.2d 8; Consolidated School District No. 4 of Greene County v. Day, 328 Mo. 1105, 43 S.W.2d 428; Kinsley Bank v. Woods, Mo.App., 78 S.W.2d 148.

■ Where the subject matter of a counterclaim is involved in the determination of the issue in a plaintiff's cause of action in such manner that the judgment in plaintiff's cause of action necessarily negatives the facts on which defendant relies to establish his demand, the judgment in plaintiff's case will be res judicata. 50 C.J.S. Judgments § 684, p. 137, note 32.

■ In the case at bar, plaintiffs sued for the reasonable value of their services as attorneys for defendant in the case of Munday v. Thielecke. The defendant's counterclaim sought recovery of damages for an alleged wilful breach by plaintiffs of their duties as counsel for defendant. The acts alleged as the basis of the counterclaim could have been set up as a complete

defense to plaintiffs' cause of action. An attorney who acts in bad faith and seeks to secure his personal advantage to the prejudice of his client may properly be denied any compensation for his services. In re Conrad, 340 Mo. 582, 105 S.W.2d 1; Faber v. Enkema, 180 Minn. 493, 231 N. W. 410; Allen v. Moushegian, 320 Mass. 746, 71 N.E.2d 393; Duffy v. Colonial Trust Co., 287 Pa. 348, 135 A. 204, 49 A. L.R. 406; Ingersoll v. Coal Creek Coal Co., 117 Tenn. 263, 98 S.W. 178, 9 L.R.A.,N.S., 282; 7 C.J.S. Attorney and Client § 167c, p. 1025.

A defense to plaintiffs' cause of action based on Meyer Hessel's alleged misconduct was available to defendant and, if successful, would have been a bar to recovery by plaintiffs of any fee for services rendered. Since such defense was available, the judgment for plaintiffs on their cause of action must be considered as an adjudication that plaintiffs were not guilty of a breach of their duty as attorneys for the defendant.

The judgment on defendant's counterclaim is reversed.

WOLFE, P. J., and RUDDY, J., concur.