**MENDOTA INSURANCE COMPANY,**
**Plaintiff,**

v.

**Tina Marie HURST, et al., Defendants.**

No. 96–0202–CV–W–5.

United States District Court,
W.D. Missouri,
Western Division.

April 8, 1997.

Robert L. Wehrman, Miriam Glueck, Linda C. McFee, Polsinelli, White, Vardeman & Shalton, Kansas City, MO, for Plaintiff.

Andrew J. Gelbach, Warrensburg, MO, for Tina Marie Hurst.

Robert E. Harris, Warrensburg, MO, for Matthew G. Hurst.

John P. Poland, Dale J. Ream, Baker, Sterchi, Cowden & Rice, Kansas City, MO, for Steven E. Jenkins.

## ORDER GRANTING SUMMARY JUDGMENT ON COUNTERCLAIM AND CROSS–CLAIM

LAUGHREY, District Judge.

Pending before the Court is Defendant Tina Hurst's and Defendant Matthew Hurst's Motion to Dismiss Defendant Jenkins' Declaratory Judgment Claim [Doc. # 76]. By Order dated March 21, 1997, the Court notified the parties that because resolution of the Motion would require the Court to consider matters outside of the pleadings, the Court would treat the Motion as one for summary judgment.

### I. Factual Background

This matter arises out of an automobile accident that occurred on May 22, 1993. The accident involved cars driven by Defendant Steven Jenkins ("Mr. Jenkins") and Defendant Tina Made Hurst ("Ms. Hurst"). Gary Hurst, Sr. ("Mr. Hurst"), Gary Hurst, Jr., and Matthew Hurst were passengers in the car driven by Ms. Hurst. Mr. Hurst was killed in the accident and Gary Hurst, Jr., Matthew Hurst and Ms. Hurst each suffered bodily injuries. At the time of the accident, Mr. Jenkins was covered by an automobile insurance policy issued by Plaintiff Mendota Insurance Company ("Mendota"). The insurance policy covered bodily injuries of up to $25,000 per person and contained a $50,000 per occurrence limitation. [Pl.'s Summ. J. Ex. 1.]

On May 27, 1993, Mr. Andrew Gelbach, counsel for Gary Hurst, Jr., Matthew Hurst and Ms. Hurst, wrote a letter to the adjusting company hired by Mendota to investigate the accident. [Jenkins' Ex. A.] The letter provided in relevant part, as follows:

> In accordance with Missouri Revised Statute 408.040, this letter is a formal demand for payment of the policy limits of all liability insurance coverages that apply to this case. My willingness to recommend a policy limits settlement with my clients is conditioned upon the above events occurring and this documentation being provided to me *timely*. My willingness to recommend a policy limits settlement is open for 60 days from the date of this letter.

[Jenkins' Ex. A.] [1] In addition, the letter set forth that Mr. Gelbach's willingness to recommend a policy limits settlement was conditioned upon the production of various documents and information, including the following: letters verifying total liability coverage and ownership of the vehicle, certified copies of the insurance policies, copies of Mr. Jenkins' certificate of title, federal and state income tax returns, net worth statements, payroll checks and/or income records, and an affidavit stating how the accident occurred, and where and what alcohol Mr. Jenkins had consumed prior to the accident. [Jenkins' Ex. A.] Mr. Gelbach's recommendation was further conditioned upon his being able to take the

---

1. The statute referenced in the letter, Mo.Rev. Stat. § 408.040, provides in relevant part that "[i]n tort actions, if a claimant has made a demand for payment of a claim or an offer of settlement of a claim, ... and the amount of the judgment or order exceeds the demand for payment or offer of settlement, prejudgment interest shall be calculated from a date sixty days after the demand or offer was made, or from the date the demand or offer was rejected without counter offer, whichever is earlier. Any such demand or offer shall be made in writing and sent by certified mail and shall be left open for sixty days unless rejected earlier."

sworn statement of Mr. Jenkins within 60 days. [Jenkins' Ex. A.]

On June 14, 1993, Mendota sent a letter to Mr. Gelbach enclosing a certified copy of the insurance policy and informing Mr. Gelbach that the requested information relating to Mr. Jenkins and his personal assets would have to be obtained directly from Mr. Fitzgerald, Mr. Jenkins' personal attorney. [Jenkins' Ex. B.] The letter further stated:

> We will not be disputing coverage in this matter. I understand that this will be an obvious payment of our policy limits for the death of Gary Hurst, Sr.; however, I am requesting from you a copy of any medical records or documentation you have supporting the injuries suffered by his wife and children.

[Jenkins' Ex. B.] No settlement was concluded with respect to the payment of policy limits for the death of Mr. Hurst within the 60 days following the May 27, 1993, letter. *See Hurst v. Jenkins,* 908 S.W.2d 783, 787 (Mo.App.1995).

On July 27, 1993, a wrongful death suit was filed against Mr. Jenkins in state court for the death of Mr. Hurst. [Jenkins' Ex. C.] Pursuant to the insurance policy, Mendota appointed counsel to represent Mr. Jenkins in the lawsuit. In Mr. Jenkins' Answer to the wrongful death Petition, Mr. Jenkins stated as follows:

> For his other and further answer and defense, defendant states that with regard to plaintiffs' claim for damages for the death of Gary V. Hurst, Sr., there was an offer of settlement by plaintiffs and an acceptance of that offer by defendant, giving rise to a contract of settlement and, thus, entitling defendant to specific performance of said contract.

[Jenkins' Ex. D at ¶ 26.] Mr. Jenkins did not file a motion to enforce the settlement agree-

ment in the wrongful death suit. [Def.'s Opp. at p. 3.]

On September 28, 1994, the wrongful death case proceeded to trial and the jury entered a verdict for $850,000 against Mr. Jenkins. Pursuant to Mo.Rev.Stat. § 408.040, the Court awarded $90,123.35 in prejudgment interest to the Hursts. [Pl.'s Summ. J. Ex. 19.] The Missouri Court of Appeals affirmed the prejudgment interest award, finding that Mr. Jenkins had, in his Answer, judicially admitted that a proper demand for settlement of the wrongful death claim was made. *See Hurst,* 908 S.W.2d at 786. Mendota paid into the state court its $25,000 policy limits on the wrongful death judgment, in addition to the accrued prejudgment interest.

Thereafter, in October 1994, Mr. Gelbach and Mr. Jenkins' attorney both made formal demands that Mendota pay the entire $850,000 judgment. [Pl's Summ. J. Exs. 20 and 21.] In addition, Ms. Hurst, Gary Hurst, Jr., and Matthew Hurst each filed separate lawsuits in state court for the injuries they allegedly sustained in the accident.

On February 21, 1996, Mendota filed a three-count Complaint in this Court. By Order dated August 15, 1996, the Court dismissed Mendota's interpleader claim set forth in Count I of its Complaint based upon a lack of subject matter jurisdiction. Mendota's claims for declaratory relief set forth in Counts II and III of the Complaint are still pending before this Court. In such Counts, Mendota seeks a declaration from the Court concerning its obligations to pay any additional amounts in connection with the outstanding judgment in the wrongful death action and/or to pay any amount in excess of the remaining applicable policy limits of $25,000 in connection with the bodily injury claims of the Hursts.[2]

On November 6, 1996, Mr. Jenkins filed a "Counterclaim and Cross-claim for Declaratory Relief."[3] Mr. Jenkins seeks a declara-

---

2. As of the present date, judgments have been entered in each of the bodily injury cases totaling $500,000, and Mendota has paid its remaining $25,000 policy limits, on a pro rata basis, into the state courts in which the bodily injury lawsuits are pending. Mendota has also paid the accrued post-judgment interest on those judgments. [*See* Supplemental Suggestions in Supp. of Motion for Summ. J. Ex. A.]

3. Although Mr. Jenkins' claim is titled as both a counterclaim and cross-claim, Mr. Jenkins' claim as set forth in his filing, does not seek any relief from, nor relate to any obligation of, Plaintiff Mendota.

tion from this Court that the Hursts' written settlement demand set forth in Mr. Gelbach's letter of May 27, 1993, was accepted by Mendota and Mr. Jenkins, and that the Hursts breached the settlement agreement by filing the wrongful death action. Mr. Jenkins further seeks a declaration that the May 27, 1993, letter did not constitute an offer to settle the bodily injury claims because the offer was for an aggregate settlement, and therefore in violation of Rule 1.8(g) of the Rules of Professional Conduct.

## II. Discussion and Analysis

In the underlying wrongful death lawsuit, Mr. Jenkins asserted his acceptance of the Hursts' settlement offer as an affirmative defense in his Answer. As set forth above, paragraph 26 of Mr. Jenkins' Answer specifically provides:

> For his other and further answer and defense, defendant states that with regard to plaintiffs' claim for damages for the death of Gary V. Hurst, Sr., there was an offer of settlement by plaintiffs and an acceptance of that offer by defendant, giving rise to a contract of settlement and, thus, entitling defendant to specific performance of said contract.

[Jenkins' Ex. D at ¶ 26.]

The Court is unaware of the extent to which, if any, the settlement defense was pursued in the wrongful death case. However, it is clear from the record that there was an adjudication on the merits and the jury rendered a verdict in favor of the Hursts and the other Plaintiffs.

In their Motion to Dismiss, the Hursts argue that because Mr. Jenkins raised the issue of the proposed settlement in his Answer in the wrongful death suit, his current cross-claim is barred by the "doctrines of merger, the law of the case, res judicata, collateral estoppel and issue preclusion." [Def.s' Motion at p. 1.] The Court agrees that

the doctrine of res judicata precludes Mr. Jenkins from maintaining his claim.[4]

"Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645 n. 5, 649, 58 L.Ed.2d 552 (1979). *See also Boggiano v. Thielecke,* 326 S.W.2d 386, 391 (Mo.App.1959). "A valid judgment for the plaintiff operates to bar not only defenses interposed and adjudicated, but also those which were available and might have been raised." *Id.* (citations omitted.) The doctrine of res judicata applies where the following factors are present:

> (1) the prior judgment was rendered by a court of competent jurisdiction;
>
> (2) the prior judgment was a final judgment on the merits;
>
> (3) the same cause of action is present; and
>
> (4) the same parties or their privies are involved in both cases.

*Lane v. Peterson,* 899 F.2d 737, 742 (8th Cir.), *cert. denied,* 498 U.S. 823, 111 S.Ct. 74, 112 L.Ed.2d 48 (1990) (*citing Murphy v. Jones,* 877 F.2d 682, 684 (8th Cir.1989)). *See also King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints,* 821 S.W.2d 495, 501 (Mo. banc. 1991) (For res judicata to apply, the following identities must be present: identity of the cause of action and thing sued for; identity of the persons and parties to the action; and identity of the person for or against whom the claim is made.)

Defendant Jenkins' Opposition to the Motion does not dispute the jurisdiction of the court rendering the judgment in the wrongful death case, nor that a final judgment was rendered on the merits. Additionally, there is no dispute that the wrongful death action and Mr. Jenkins' Counterclaim and Cross-

---

4. Although not raised by the Hursts' Motion to Dismiss, it is clear to the Court that Mr. Jenkins' claim relating to the existence of the settlement agreement was a compulsory counterclaim under Missouri law. The claim arose out of the same transaction or occurrence and the claim was logically related to the wrongful death ac-

tion. Additionally, it is clear under the facts of this case that Mr. Jenkins knew of the existence of his claim at the time the wrongful death action was filed because Mr. Jenkins alleged the existence of the settlement agreement as an affirmative defense in his Answer.

claim for declaratory relief involve the same parties. The real question is whether the same cause of action was involved in both lawsuits.

■ The Court recognizes that res judicata does not normally bar a claim which is based on the same facts raised as a defense in an earlier lawsuit. "When facts form the basis of both a defense and a counterclaim, the defendant's failure to allege these facts as a defense or a counterclaim 'does not preclude him from relying on those facts in an action subsequently brought by him against the plaintiff.'" *Martino v. McDonald's Sys., Inc.*, 598 F.2d 1079, 1084 (7th Cir.), *cert. denied*, 444 U.S. 966, 100 S.Ct. 455, 62 L.Ed.2d 379 (1979) (*quoting* Restatement (Second) of Judgments, § 56.1(1), Comment b (Tent. Draft No. 1, 1973)). A narrow exception to the rule exists however, when the prosecution of a subsequent claim would nullify rights established in an earlier lawsuit.

■ In *Martino*, the Seventh Circuit was faced with a scenario substantially similar to this case. A franchisor brought suit against a franchisee alleging that the franchisee had violated a restrictive covenant in the franchise agreement. The parties entered into a consent judgment pursuant to which the franchisee sold his franchise back to the franchisor. Thereafter, the franchisee filed suit alleging that the enforcement of the restrictive covenant in the franchise agreement violated antitrust laws. *Id.* at 1081. The district court granted summary judgment in favor of the franchisor. The Seventh Circuit affirmed and held that the antitrust claim was barred by the doctrine of res judicata. The Seventh Circuit explained:

> Both precedent and policy require that res judicata bar a counterclaim when its prosecution would nullify rights established by the prior action. Judicial economy is not the only basis for the doctrine of res judicata. Res judicata also preserves the integrity of judgments and protects those who rely on them.

*Id.* at 1085. *See also* Restatement (Second) of Judgments § 22(2)(b) (1982) ("A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if: the relationship between the [claim now being raised and the earlier claim] . . . is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.")

The court concluded in *Martino*, that the second lawsuit that alleged that the restrictive covenant violated antitrust laws was a direct attack on the rights established by the earlier judgment and accordingly, was barred under the doctrine of res judicata. *Id.*

The Missouri Court of Appeals reached a similar conclusion in *Boggiano*, 326 S.W.2d 386. In *Boggiano*, the Court reversed a judgment in favor of a defendant on a counterclaim where the judgment on the counterclaim negated the validity of the judgment in the plaintiff's case. The Court stated:

> Where the subject matter of a counterclaim is involved in the determination of the issue in a plaintiff's cause of action in such manner that the judgment in plaintiff's cause of action necessarily negatives the facts on which defendant relies to establish his demand, the judgment in plaintiff's case will be res judicata.

*Id.* at 391.

Applying the above case law to the facts of this case, and viewing the evidence in the light most favorable to Mr. Jenkins, it is clear that the doctrine of res judicata precludes Mr. Jenkins from maintaining his claim relating to the settlement agreement as a matter of law.

Finally, the Court will briefly address Mr. Jenkins' assertion that the May 27, 1993, letter did not constitute an offer to settle the bodily injury claims because it violated Rule 1.8 of the Rules of Professional Responsibility. Because the Court finds that the May 27, 1993, letter is insufficient as a matter of law to constitute a demand under § 408.040, as set forth more fully in its Memorandum and Order relating to Mendota's Motion for Summary Judgment, the issue of whether the offer violated Rule 1.8 is moot.

## III. Conclusion

For the reasons set forth above, it is hereby

ORDERED that the Motion to Dismiss Defendant Jenkins' Declaratory Judgment Claim Against the Hursts [Doc. # 76] is GRANTED. Summary judgment is entered in favor of Defendants Tina Hurst and Matthew Hurst on Mr. Jenkins' Cross-claim relating to the issue of whether a settlement agreement was entered into, and in favor of Plaintiff Mendota on Mr. Jenkins' alleged Counterclaim.