# Duffy *v.* Colonial Trust Co., Appellant.

*Attorney-at-law—Deception of court—Injury to client—Misrepresentations to secure continuance of case.*

1. Where an attorney-at-law suggests to the principal witness of his client that he simulate illness for the purpose of deceiving the

court, and obtaining a continuance of the case, such conduct is not only bad faith toward the court, but also professional bad faith towards the client.

2. If such a suggestion came to the knowledge of the court, it was calculated to injure the client by making the tryer or tryers of the cause believe that a client who would permit such conduct must have a weak or dishonest cause, and that fact the attorney must have known.

3. The fact that the client did not at the time discharge the attorney, is immaterial, since the bad conduct of the attorney did not come to the attention of the client until after the case had been settled.

4. The fact that the witness did not adopt the attorney's suggestion is immaterial.

5. In such case, where the attorney sues his client to recover a bulk sum for services in connection with the case in which misrepresentations to the court were suggested, he cannot recover for any part of the bulk charge.

6. The fact that the attorney's breach of professional duty occurred in one court of the Commonwealth and he sued to recover fees in another, cannot be taken advantage of by him, for so far as concerns the application of principles which serve to maintain the integrity of the administration of law, all courts of the Commonwealth are parts of the judicial department of the government, and may be viewed as one.

Argued October 5, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 117, March T., 1926, by defendant, from judgment of C. P. Allegheny Co., July T., 1923, No. 1731, on verdict for plaintiff, in case of Thomas P. Duffy v. Colonial Trust Co. Reversed.

Assumpsit for counsel fees. Before SHAFER, P. J., EVANS and CARNAHAN, JJ.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $10,800. Defendant appealed.

*Error assigned* was, inter alia, refusal of judgment n. o. v. for defendant, quoting record.

*Thomas Patterson,* of *Patterson, Crawford, Miller & Arensberg,* with him *Joseph F. Mayhugh,* for appellant. —A lawyer cannot recover fees from a client for services rendered in a case in which the lawyer wrote a letter urging the principal witness, who was the real client, to feign sickness of such character that it would confine him to his room, when the witness was not ill and the lawyer knew he was not: Ingersoll v. Coal Co., 117 Tenn. 263; Dicken's Case, 67 Pa. 169; Serfass's Case, 116 Pa. 455.

*George E. Shaw,* of *Reed, Smith, Shaw & McClay,* for appellee.—The writing and sending of the letter exhibit "C" was not an act of bad faith either to the court or the client: West v. Smith, 101 U. S. 273. See also Watson's Case (Neb.), 119 N. W. 000.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, November 22, 1926:

Plaintiff, an attorney-at-law, sued to recover a fee for professional services rendered defendant trust company; the jury found in his favor for $10,800; defendant moved for a new trial and for judgment n. o. v., both of which were refused; judgment was entered on the verdict and defendant has appealed.

The action wherein plaintiff performed the professional services for which he sued was originally commenced by one Osterling against the County of Luzerne, to recover architect's commissions for the erection of a courthouse at Wilkes-Barre. When the action in question was pending there appears to have been considerable local feeling against Osterling, and he assigned his claim to defendant trust company. Some time after Osterling's suit was commenced and before the assignment of his claim, plaintiff was retained to succeed the lawyers who originally started the action, and, following the assignment, he continued in the case, representing the assignee, though most of plaintiff's relations, corre-

spondence, etc., seem to have been with Osterling rather than with the trust company. The case was set for trial on January 8, 1923, before Judge MAXEY, of the Court of Common Pleas of Lackawanna County, without a jury. In December, 1922, it was decided between plaintiff and Osterling that another lawyer, D. J. Reedy, of the Lackawanna County Bar, should be associated with plaintiff in the trial of the case. On December 30, 1922, plaintiff wrote to Osterling that Mr. Reedy was engaged in the trial of another cause which would occupy him for some time to come, and suggested that, if the suit against the county could be continued, Reedy could then take part in that case and it could be tried at the next term of court. In this letter, plaintiff suggests to Osterling that if he, Osterling, should be so ill as to be confined to his home and would arrange for a certificate from a physician,—stating the nature of the illness and that he would not be able to appear at court,—and would have the trust company send a telegram to this effect, "to be followed by" the doctor's certificate, "the case might be continued on account of [such] illness." This was followed by a telegram from plaintiff to Osterling stating, "If case continued, R. will come in, illness of material witness only cause for continuance, see special delivery letter, telephone me." On cross-examination, plaintiff admitted that, at the time he wrote the above letter and sent the telegram, he had received no intimation from any one that Mr. Osterling was ill, and, so far as he knew, Osterling was then "in perfect health." He also admitted that he "knew of no physician in attendance on Mr. Osterling."

At the trial of plaintiff's case, defendant trust company requested binding instructions, which were refused, and, after verdict against it, defendant moved for judgment n. o. v. and for a new trial, urging, inter alia, that the above letter, telegram and testimony showed plaintiff guilty of such unprofessional conduct, in attempting a fraud on the court, as would deprive him of

the right to collect a fee from the client whom he at the time represented. The court below left to the jury the question of whether or not plaintiff had acted in bad faith; and, in overruling defendant's motions subsequent to trial, it said: "Assuming for the purpose of this case that the court was wrong in submitting the interpretation of that letter to the jury, and assuming further that the proper interpretation of that letter did exhibit an intention on the part of the plaintiff to deceive the court, yet there remains the question, under such conditions, was the letter material to the issue involved? There was certainly no purpose on the part of the plaintiff of committing a fraud on his client, or doing the client any harm. Such being our opinion of the effect of that letter, it was in no way material to the question of whether the defendant owed to his attorney a proper fee."

The court erred in submitting to the jury the question of plaintiff's good or bad faith. The evidence which went to that point consisted only of the letter and telegram, already referred to, and plaintiff's admission that he had no reason to suppose that Osterling was sick or under the care of a physician. Moreover, plaintiff offered no exculpatory explanation, merely stating, "the letter speaks for itself."

From the above uncontested facts only one conclusion is possible: plaintiff suggested to Osterling that he simulate illness for the purpose of deceiving the court and obtaining a continuance of the case brought against the County of Luzerne by the trust company, plaintiff's client. Such conduct was not only bad faith toward the court but also professional bad faith toward the client. The case in question was set for trial before a judge without a jury, and it is quite certain that, had this incident come to the attention of that judge, or any other judge in such a position, or of a jury, if the case had been fixed for jury trial, it might very properly have injured the client by making the trier

or triers of the cause believe that a client who would permit such conduct must have a weak or dishonest cause, and this the attorney must have known; so he cannot say he was acting in professional good faith toward his client.  There is nothing to show that the incident came to the attention of the client till after the case had been settled, but let us suppose the trust company had ascertained that its lawyer was indulging in such conduct; under those circumstances, the client would not only have been justified in discharging the attorney but it would also have been its duty to discharge him.  Had this occurred, and had the attorney, after his dismissal, sued the trust company for fees, there could have been no recovery; that the knowledge of the attorney's misconduct did not come to the client at the time and that he did not in fact discharge the attorney, can make no difference in this regard.

Here, plaintiff testified that his connection with the case started on September 18, 1922, and terminated on January 16, 1923, and that he was claiming a fee of $10,000 to cover professional services of every kind and description rendered to the trust company during that period.  This was a bulk charge and, of course, included the professional service in writing the letter to Osterling which suggested that he join with plaintiff in committing a fraud on the court; if plaintiff may not recover for that part of the services, which certainly he cannot, then this letter and all connected with it being part of the bulk services for which he is asking compensation, it follows that he cannot recover for any part of such services.

In Ingersoll v. Coal Creek Coal Co., 117 Tenn. 263, 98 S. W. 178, 9 L. R. A. (N. S.) 282, the Supreme Court of Tennessee very properly ruled that, where an attorney is guilty of unprofessional conduct, he may, in addition to, or in place of, other and more severe penalties, be deprived of the right to recover fees for services connected with the case in which his misbehavior occurred; this

principle is applicable to the present case, and the court below should have so ruled. The fact that the material witness approached by plaintiff did not join in the act of deception and bad faith toward the court suggested to him, cannot serve to relieve the culprit; for his letter and telegram to this witness were overt acts of misconduct in themselves, which carried plaintiff's professional misbehavior beyond the point of mere unexecuted intentions. Nor can the fact that plaintiff's breach of professional duty occurred in one court of the Commonwealth and he sued to recover fees in another, be taken advantage of by him, for, so far as concerns the appli-- cation of principles which serve to maintain the integrity of the administration of law, all courts of the Commonwealth are parts of the judicial department of the government and may be viewed as one.

The judgment is reversed and is now entered for defendant notwithstanding the verdict for plaintiff.