## Commonwealth v. Union National Bank of Reading

*George B. Balmer*, for appellant.

*Frank A. Sinon*, Deputy Attorney General, and *Claude T. Reno*, Attorney General, for Commonwealth.

WICKERSHAM, J., November 3, 1941.—This matter was before us on appeal from a settlement of defendant's 1936 shares tax and on December 30, 1940, we filed our opinion dismissing the appeal and directed

judgment to be entered for the Commonwealth. The matter is now before us on 167 exceptions filed by counsel for defendant to that opinion, 136 of which except to our affirmance of certain of the Commonwealth's requests for findings of fact and conclusions of law, and our refusal or failure to affirm defendant's requests; 137 to 145, inclusive, except to the conclusions of law found by the court; 146 to 163, inclusive, except to many statements contained in our discussion; 164 excepts to our failure to find the tax rate in question to be five mills for 1936 rather than eight mills; 165 excepts to our failure to find the valuation of shares of stock at their actual value of $6.50 per share rather than $17.02; 166 excepts to our allowance of commission to the Attorney General; and 167 excepts to our failure to enter judgment for defendant.

At the oral argument of the exceptions counsel for defendant grouped them into the following four propositions:

1. Shares of National bank stock may not be taxed at a higher value than their current market value.

2. The proper tax rate on National bank shares for 1936 was five mills rather than eight mills.

3. The 1936 Pennsylvania tax on National bank shares is greater than the tax imposed on other moneyed capital—particularly personal property in general and the property of stock and bond brokers—therefore the Pennsylvania tax violates section 5219 of the Revised Statutes of the United States.

4. The 1936 tax upon shares of National banks violates the uniformity clause (article IX, sec. 1) of the Pennsylvania Constitution.

We will consider these propositions in the order above stated.

1

In its specification of objections filed with its appeal, and in the original argument, defendant strenuously

maintained that National bank shares could not, under the Act of July 15, 1897, P. L. 292, as amended, 72 PS §1931 et seq., be taxed at a higher value than their current market value. After carefully considering all the reasons advanced by defendant in support of this contention, we felt, whatever the preëxisting practice might have been, the Act of 1897 was intended to establish a new and exclusive method for fixing the taxable value of National bank shares, and that the current market value is no longer a necessary limitation. No sufficient reasons were advanced upon the argument of the exceptions to cause us to change our position in this respect. Defendant lays great stress upon the fact that National bank shares were taxed at their current market value for a considerable period of years prior to the adoption of the Act of 1897; and asserts that the words "at the same rate as . . . other moneyed capital," which are found in the Act of 1897, had in the past acquired the meaning of "current market value." We feel that these arguments, even if accepted as correct, are not sufficient to overcome the plainly-expressed intention of the legislature in the Act of 1897, wherein it is stated (72 PS §1932) :

"The actual value of each share of stock to be ascertained and fixed by adding together the amount of capital stock paid in, the surplus and undivided profits, and dividing this amount by the number of shares."

It is difficult to give any other fair construction to this provision than that the taxable value of National bank shares is to be ascertained in every case by adding the capital, surplus, and undivided profits and dividing the total by the number of shares, regardless of what the current market value might be, and regardless of what the preceding practice may have been. Such has been the uniform administrative construction of this statute ever since its adoption and it should not be altered at this late date except for the most clear and compelling reasons.

For its position on this proposition defendant relies on Commonwealth v. Union Trust Company of Pittsburgh, 237 Pa. 353, Commonwealth v. Mortgage Trust Company of Pennsylvania, 227 Pa. 163, and Carlisle School District v. Hepburn, 79 Pa. 159. We have examined these authorities but find no definite or persuasive indication in any of them to the effect that National bank shares, under the Act of 1897, as amended, must be taxed at no higher than their current market value. Certainly, if the legislature had intended to place the "current market value" as a maximum limit upon the operation of this statutory formula, it would have so provided.

### 2

In support of his second proposition, counsel for defendant states that neither defendant nor the Commonwealth discussed the question whether the Act of July 15, 1897, P. L. 292, as amended by the Act of July 28, 1936, P. L. 76, imposed an eight-mill or five-mill tax on shares of National banks for the calendar year ending December 31, 1936; nevertheless, in the absence of argument on this phase of the case, the court found that the shares of defendant were subject to an eight-mill tax for said period. He, therefore, requests a reconsideration on this question.

In order that this argument may be definitely settled, it is our opinion that the proper tax for 1936 was clearly eight mills and not five mills. The Act of 1897, as amended by the said Act of 1936, provides as follows:

"It shall be the duty of the Department of Revenue to assess such shares for taxation at the same rate as that imposed upon other moneyed capital in the hands of individual citizens of the State, that is to say, for the calendar year ending December thirty-first, one thousand nine hundred thirty-six, at the rate of eight mills upon each dollar of the actual value thereof, and thereafter at the rate of four mills upon each dollar of the ac-

tual value thereof; the actual value of each share of stock to be ascertained and fixed by adding together the amount of capital stock paid in, the surplus, and undivided profits, and dividing this amount by the number of shares."

Defendant contends the words "at the same rate as . . . other moneyed capital" in the above quotation have always in the past restricted the bank shares tax to the same millage rate as the personal property tax. Since personal property was taxed at five mills in 1936 defendant contends the bank shares tax must also be five mills.

In spite of defendant's insistence, it is not now necessary to decide whether the words "at the same rate as . . . other moneyed capital" had the effect in the past ascribed to them by defendant. Whatever the rule may have been prior to July 28, 1936, such limitation certainly was discarded by the amendment of the Act of 1897, which was approved on that date.

As indicated above, the only substantial amendment which was made on that date was the insertion of the following words:

". . . for the calendar year ending December thirty-first, one thousand nine hundred thirty-six, at the rate of eight mills upon each dollar of the actual value thereof. . . ."

No other possible meaning can be taken from these words than that the 1936 tax rate is eight mills. Any prior language, if inconsistent, must be disregarded. It is too well established to require extended comment that, if there are inconsistent statements in a statute, the last in point of position or date must prevail: Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 64. Defendant's argument that the correct 1936 tax on bank shares is only five mills disregards this principle of statutory construction and cannot be accepted.

3

Probably the most important proposition in defendant's argument upon the exceptions was its objection to our conclusion that the Pennsylvania tax on National bank shares did not violate section 5219 of the Revised Statutes of the United States.

Defendant contends we disregarded the controlling United States Supreme Court decisions when we affirmed the Commonwealth's requests for conclusions of law nos. 52 to 58. These requests for conclusions merely indicated in effect that the long-standing doctrine of implied reciprocal tax immunity between the State and Federal Governments was being narrowed and restricted by recent decisions of the United States Supreme Court, and that a change in attitude of the Supreme Court as to the extent and nature of National banks' immunity from State taxation might be forthcoming in the future. We were well aware that, under present precedents relative to National bank taxation, State taxation of such banks is entirely controlled by section 5219 of the Revised Statutes.

Defendant also contends, relative to the operation of section 5219 of the Revised Statutes, that it had met the necessary burden of proving that the 1936 Pennsylvania tax on National bank shares was greater than the tax upon competing moneyed capital in the form of personal property. We considered this issue at considerable length in our former opinion in this case. After applying the correct test, which is whether any actual and practical inequality of burden exists with respect to substantially competing moneyed capital, we found no improper discrimination against National banks and in favor of personal property for 1936. Defendant has advanced nothing additional in its argument upon the exceptions which would indicate it has met the burden of proof required by such decisions as First National Bank of Guthrie Center v. Anderson et al., 269 U. S. 341, Amoskeag Savings Bank v. Purdy,

231 U. S. 373, First National Bank of Shreveport et al. v. Louisiana Tax Commission et al., 289 U. S. 60, and Tradesmens National Bank of Oklahoma City v. Oklahoma Tax Commission, 309 U. S. 560. We feel our original findings in this respect should not be disturbed. A mere difference in millage between the tax on National bank shares and the tax on personal property is not conclusive. There must be discrimination in the actual burden of the tax, and the alleged discrimination must exist with respect to competing moneyed capital. Defendant has not shown any such discrimination in burden, nor has it established competition.

Defendant also objects to our ruling that, actually and practically, personal property in general and the National bank shares here involved were taxed at the same rate for comparable periods of time, since the eight-mill 1936 National bank shares tax is imposed as of December 31, 1936, whereas the 1937 State personal property tax, which brought the total personal property tax to eight mills, is imposed as of January 1, 1937. (See opinion above referred to, pages 15, 16, for full discussion of this matter).

Here again defendant overlooks the fact that the issue is practical and actual discrimination and not the mere theoretical inequality created in the abstract by reference to a statutory difference in millage rates or periods covered. On the basis of dates of imposition and payment, the National bank shares here involved were not actually subjected to any greater tax burden than personal property in general. If, as was the case here, the actual tax incidence and burden as between personal property and National bank shares is such that no unfriendly competition against National banks is fostered by a lower tax burden on personal property, the requirements of section 5219 are met: First National Bank of Guthrie Center v. Anderson et al., supra; Mercantile Bank v. New York, 121 U. S. 138.

Again referring to personal property, defendant objected to our ruling that the taxation of National bank shares at a value fixed by statutory formula, and personal property at actual value, is not discriminatory. Of course, a mere difference in method of taxation is not discrimination: Davenport Bank v. Davenport Board of Equalization, 123 U. S. 83, 31 L. Ed. 94; Citizens' & Southern National Bank v. City of Atlanta, 53 F. (2d) 557; Scobee v. Bean, etc., 109 Ky. 526, 59 S. W. 860.

As we stated in our former opinion, the statutory formula for valuation of National bank shares prescribed by the Act of 1897 was intended to give approximately the actual value thereof: Commonwealth v. Mortgage Trust Company of Pennsylvania, supra. We found that defendant had not established that this formula, in its general operation throughout the State, gave a greater taxable value to bank shares than their actual value. Defendant's inconclusive information as to the effect of the statutory formula upon National banks in Philadelphia, in view of the large number of such banks elsewhere in the Commonwealth, cannot be controlling. Nor can any great importance be attached to the fact that numerous other National banks have filed appeals asserting the unequal operation of the Pennsylvania tax on National bank shares. These appeals contain merely allegations, not established facts.

Defendant further contended, relative to section 5219, that we erroneously found that stock and bond brokers were not in competition with National banks. This again is a factual issue which was carefully considered when we wrote our former opinion. In view of the wholly insufficient testimony of defendant relative to this issue, the necessary conclusion was then, and must remain, that stock and bond brokers are not in actual or substantial competition with National banks. However, even aside from the issue of competition, nothing was placed on the record which would indicate

the amount of tax burden borne by stock and bond brokers. To establish discrimination, defendant must show both competition and lower tax burden, which it has failed to do; and our ruling that there is no discrimination in favor of stock and bond brokers must stand.

4

Defendant raises for the first time in its exceptions the constitutional issue that the tax as imposed upon shares of National banks for the calendar year 1936 violates the "uniformity" clause (article IX, sec. 1) of the Pennsylvania Constitution, contending that an eight-mill tax on National bank shares and a five-mill tax on personal property is lacking in uniformity and therefore unconstitutional.

We think it can be accepted that article IX, sec. 1, of the Pennsylvania Constitution permits different methods of taxation for different subjects if the particular subject taxed is selected under a reasonable basis of classification. Clearly, State and National bank shares differ in many respects from other personal property. Insofar as article IX, sec. 1, of our Constitution is concerned, there is no reason why such shares may not be taxed at a different rate or in a different manner from other intangible personalty: Commonwealth v. Mortgage Trust Company of Pennsylvania, supra; Commonwealth v. Delaware Division Canal Co., 123 Pa. 594.

In support of the contention as to lack of uniformity, defendant referred to the recent cases of Commonwealth v. Erie Dry Goods Co., 50 Dauph. 411, and Commonwealth v. Chester County Light & Power Co., 339 Pa. 97. We find the latter case contained no reference to the constitutional issue of uniformity; and in the former the issue of uniformity was eliminated in an opinion filed October 14, 1941 (not yet reported) upon consideration of exceptions. These two decisions, however, concerned only the differences between corporate loans and personal property. The basis for placing

State and National bank shares in a separate class for the purposes of taxation is much more sound and logical than is the basis for differentiating between the two types of personalty which are subject to corporate loans and personal property tax respectively.

In view of the foregoing we are of opinion defendant's exceptions must be overruled. Practically all the questions raised in this case have been reviewed at length in the opinion of President Judge Hargest in the case of Commonwealth v. City National Bank of Philadelphia, 50 Dauph. 147.

We might add that a few well-founded exceptions would be much more worthy of consideration than the very, very many exceptions filed by defendant.

And now, November 3, 1941, all of defendant's exceptions are overruled and dismissed, and we affirm our opinion filed December 30, 1940, in this case, and direct judgment to be entered in favor of the Commonwealth as stated in the said opinion.