**William R. KEITH, d/b/a Keithco, Appellant (Defendant),**

v.

**Lawrence F. BURZYNSKI, Appellee (Plaintiff).**

**No. 5335.**

Supreme Court of Wyoming.

Dec. 23, 1980.

---

B. J. Baker, of Brown, Drew, Apostolos, Massey & Sullivan, Casper, for appellant (defendant).

John Burk, of John Burk, P. C., Casper, for appellee (plaintiff).

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROSE, Justice.

A utility contractor and a land developer entered into a construction contract, according to the terms of which the contractor was to be liable for liquidated damages at the rate of $150.00 per day for construction delay. Construction was, in fact, delayed for 83 days, and it is undisputed that at least 18 days of this delay were chargeable to the land developer. The trial court apportioned the fault for failure to timely complete the work and assessed liquidated damages in the sum of $9,750.00 against the contractor for 65 days of the delay. Appellant contractor argues that where both parties contribute to the delay, liquidated damages—even if adjusted to reflect proportionate fault—are inappropriate. Appellant also argues that the trial court erred in determining that it was at fault in any respect. We cannot agree with appellant's position and will affirm.

## THE FACTS AND CONTENTIONS

The contract provided for defendant–appellant Keith, d/b/a Keithco, to "perform all the sanitary sewer, water main and services, earth work, utilities trenching, and manhole construction work heretofore ordered" by the developer, plaintiff–appellee Burzynski. Work was to be commenced on August 22, 1977, and completed within 33 consecutive calendar days. Thus, the parties had agreed upon a September 24 deadline. The trial court made the following findings of fact:

"2. The defendant completed substantially all of the work by December 15, 1977. The defendant was justified in stopping work at that time as he had not been paid in full for work completed and the remaining work could not be accomplished, through no fault of the defendant. The defendant's work on manholes could not reasonably be completed until the paving, to be done by others, was finished. The paving was not completed until 1978. Also, the weather was too cold for completion of the pipe testing work, a factor partly due to delays attributable to the plaintiff because of a lack of materials which were to have been supplied by the plaintiff and inadequate staking done by the plaintiff's representative.

"3. The amount of time consumed by the defendant in excess of the thirty–three day limit was eighty–three days. Eighteen days of the delay are excused as being the plaintiff's responsibility because of staking and material problems,

leaving sixty–five days unexcused at $150.00 a day or $9,750.00 as liquidated damages for the plaintiff." [1]

The appellant argues that the appellee was to provide the materials and that the appellee's tardy provision of materials caused all of the delay. Indeed, the appellant testified to various delays caused by reason of appellee's failure to timely provide materials and this testimony explains the trial judge's finding that the appellee was responsible for 18 days of the delay. It is undisputed that certain fire hydrants were not furnished by the appellee until December 12. Appellant argues that the hydrants were necessary to test the water system and the appellee's failure to provide them on time makes the appellee liable for virtually all, or indeed *all*, of the delay.

Appellant also makes the argument that since the appellee breached the contract by providing the materials late, it must forfeit its entitlement to liquidated damages. Appellant further claims that there were many other instances of appellee–caused delay which the appellant did not deem necessary to prove at trial because of its belief that if the owner causes some delay, the contractor will not be liable for liquidated damages.

Appellee has not cross–appealed his denial of liquidated damages for 18 days. He apparently concedes fault for that portion of the delay but argues that the trial court was legally correct in its approach to apportioning blame for the delay. He also argues that the failure to timely provide the fire hydrants did not interfere with substantial completion of the work since the hydrants were "bolt–on" equipment.

*Liquidated Delay Damages Where Both Parties Have Contributed to the Delay*

Since there is no serious dispute that the appellee caused at least some of the delay, we have directed our attention first to the issue of whether the delay caused by the appellee disentitles him to collect any liquidated delay damages from the appellant for any delay which the appellant may have caused.

Our review of the law persuades us that 5 Williston on Contracts, Third Edition § 789, pp. 764–766, correctly states the general rule:

"Where both parties are in fault a party who has contributed to the breach cannot recover a sum stipulated as liquidated damages, even though performance of the contract is continued, and the other party thereafter is at fault: ..."

The author goes on, however, to notice an exception where he says:

"In building contracts, there is often inserted a provision giving the architect power to certify an extension of time in certain cases, by virtue of which the effect of a delay caused by the owner operates merely as an extension of the time for performance, and a new time is substituted for the old. In that event though the owner causes delay the builder is liable in liquidated damages, but the period of delay caused by the owner is deducted from the total delay. Unless the contract contains such a provision the delay due to each party will not generally be apportioned."

The exception discussed in *Williston* is based in large part on two United States Supreme Court decisions. In *United States v. United Engineering and Contracting*

---

1. In Paragraph 1 of the Findings of Fact, the court stated:

"On August 22, 1977, the defendant [appellant] commenced certain work ... The Plaintiff was entitled to liquidated damages of $150.00 per day for each day of work if the contract was not completed within thirty–three days."

By our calculations, this meant that the work was to be completed by September 24. We calculate December 15 to be 82 days, not 83 days, later than September 24. It appears that the trial court may have made a clerical error in finding that substantial completion of the project was delayed 83 days rather than 82 days. Even if this is so, we are not in a position to know whether the trial judge erroneously taxed the appellant or the appellee with the extra day of delay.

The parties have not discussed this possible error. We have done so simply to avoid adopting faulty calendar calculations in our discussion of the facts.

*Company,* 234 U.S. 236, 34 S.Ct. 843, 58 L.Ed. 1294 (1914), the government sought liquidated delay damages on a construction project which was initially delayed through the sole fault of the United States. Supplemental contracts were entered into. The supplemental contracts did not provide for liquidated delay damages, but the government relied on the liquidated delay damage provisions of the original contract to argue a claim for damages for subsequent delay by the contractor. In affirming the Court of Claims' decision against the government, the Supreme Court said:

"'. . . If a man agrees to do something by a particular day or in default to pay a sum of money as liquidated damages, the other party to the contract must not do anything to prevent him from doing the thing contracted for within the specified time.'

"The same rule was followed with approval by the New York Court of Appeals in a well considered case, *Mosler Safe Co. v. Maiden Lane S. D. Co.,* 199 N.Y. 479 [93 N.E. 81], in which it was held that, even where both parties are responsible for the delays beyond the fixed time, the obligation for liquidated damages is annulled, and in the absence of a provision substituting another date it cannot be revived, and the recovery for subsequent delays must be for actual loss proved to have been sustained.

"This principle is applicable here, the conduct of the Government's agents had caused the delays up to May 1, 1903, and the subsequent delays though chargeable to the claimant would only give rise to a claim for damages measured by the actual loss sustained. *Mosler Safe Co. v. Maiden Lane S. D. Co., supra.* We think the application of this rule is not changed by the difficulty suggested that it might be impracticable to prove actual damages. This fact, if such it be, would not permit the Government by its own fault to prevent the performance of the contract and to do that which amounts to a waiver of the stipulation and then insist upon it as a rule of damages. We think the Court of Claims was right upon this principal

branch of the case." 234 U.S. at 243–244, 34 S.Ct. at 845.

This case was distinguished in *Robinson v. United States,* 261 U.S. 486, 43 S.Ct. 420, 67 L.Ed. 760 (1923). In *Robinson,* the contract between the contractor and the United States expressly provided for liquidated delay damages and also provided for a time limit extension of one day for each day of delay caused by the government. Both the government and the contractor contributed to the delay and the Supreme Court affirmed the Court of Claims' award of apportioned liquidated damages to the government. After stating that liquidated damages were not against public policy and, indeed, after pointing out that federal law required a liquidated–damage provision in the instant contract, the court stated:

"... The fact that the Government's action caused some of the delay, presents no legal ground for denying it compensation for loss suffered wholly through the fault of the contractor. Since the contractor agreed to pay a specified rate for each day's delay not caused by the Government, it was clearly the intention that it should pay for some days' delay at that rate, even if it were relieved from paying for other days, because of the Government's action. If it had appeared that the first 61 days' delay had been due wholly to the contractor's fault, and the Government had caused the last 60 days' delay, there could hardly be a contention that the provision for liquidated damages should not apply. Here the fault of the respective parties was not so clearly distributed in time; and it may have been difficult to determine, as a matter of fact, how much of the delay was attributable to each. But the Court of Claims has done so in this case. Its findings are specific and conclusive. . . ." 261 U.S. at 488–489, 43 S.Ct. at 421.

Recent cases adhering to the distinction between *United Engineering* and *Robinson* include: *Jasper Construction, Inc. v. Foothill Junior College District,* 91 Cal.App.3d 1, 153 Cal.Rptr. 767, 774 (1979), as modified on denial of rehearing; and *Haggerty v. Sel-*

sco, 166 Mont. 492, 534 P.2d 874, 879 (1975), rehearing denied. See, also, *Flour Mills of America, Inc. v. American Steel Bldg. Co.*, Okl., 449 P.2d 861 (1969), rehearing denied.

We have discovered no Wyoming cases directly in point, although in a case involving different facts and different issues on appeal, we recently upheld an arbitrator's award of apportioned liquidated delay damages. *Matter of Town of Greybull*, Wyo., 560 P.2d 1172 (1977).

In examining the contract involved in the matter here on appeal, we note the liquidated damages provision, which provides:

"ARTICLE III. *Liquidated Damages.* If the work, or any part thereof, is not completed within the number of consecutive calendar days specified above, *subject to any extension of time granted under provisions specified in the General Conditions* or Special Conditions, the Contractor shall pay to the Owner, as liquidated damages and not as penalty, the following sum for *each and every calendar day that the Contractor is in default*; one hundred fifty and no/100 dollars, ($150.00)." (Emphasis supplied.)

Article V of the contract expressly incorporates into the contract, inter alia, the General Conditions.

In his decision letter, the trial judge directed attention to Paragraph 37[2], which contemplates that the owner may unilaterally delay the project, in which case the contractor is allowed an extension of time for the owner's delay. Thus, as in *Robinson*, supra, the contract contemplates that where both the owner and the contractor cause delays, the contractor shall still be liable for liquidated damages for the delay

he causes. The contract may be harsh, but no issue of unconscionability has been raised. Moreover, this court is reluctant to interfere with the terms of a contract. E. g., *Quin Blair Enterprises, Inc. v. Julien Const. Co.*, Wyo., 597 P.2d 945 (1979); and *Matter of Estate of Frederick*, Wyo., 599 P.2d 550 (1979).

■ The case law and the contract refute appellant's claim that the trial court committed an error of law in entertaining appellee's claim for liquidated delay damages despite the fact that appellee caused some of the delay.

### Is the Appellant Really Chargeable With 65 Days of Delay?

We see no need to delve into the murky issue of the importance of the delay in delivery of the fire hydrants. In his decision letter, the trial court stated:

"It is noted that paragraph thirty–seven [reproduced in our footnote 2, supra] of the general conditions of the contract in this case provides that the contractor is to give the engineer and owner prompt notice in writing of the cause of any delays attributable to the owner. There is no evidence to indicate that the contractor offered such notice, thereby lending greater weight to the theory that the owner should not now be prohibited from pursuing his liquidated damages claim."

In *Quin Blair Construction*, supra, at 597 P.2d 951–952, we said:

"Paragraph 8.3.1 and 8.3.2, supra, make plain that Julien was required to request in writing any extensions of time to complete the contract, even if the delay was

**2.** Paragraph 37 of the GENERAL CONDITIONS provides:

"DELAYS AND EXTENSION OF TIME

"If the Contractor is delayed in the final completion of the work by any act or omission of the Owner or the Engineer; or by any other contractor employed by the Owner; or by fire, strikes, unavoidable casualties, or other causes beyond the control of the Contractor, which could have been neither anticipated or [sic] avoided; then an extension of time, as determined by the Engineer, will be granted by the Owner. *The Contractor, however, shall give the Owner and the Engineer prompt notice in writing of the cause of delay in each case.*

"Extension of time will not be granted for delays caused by unfavorable weather, except as provided elsewhere herein, unsuitable ground conditions, inadequate construction force or plant, or the failure of the Contractor to place order for materials or equipment a sufficient time in advance to insure delivery when required on the work." (Emphasis supplied.)

due to the owner's actions or neglect. It is evident from the record that Julien at no time requested in writing an extension of time to complete the contract. [Footnote] We can see no reason why we should ignore these plain and unambiguous terms of the contract. They serve a plain and beneficial purpose when disagreement arises. If there is to be an extension of the time, it should be in writing for all to see as contemplated by the contract terms. After competent parties have solemnly contracted, a court should exercise restraint in nullifying its terms and any other practice is dangerous, *Younglove v. Graham & Hill*, Wyo. 1974, 526 P.2d 689. When a party makes a contract and reduces it to writing, he must abide by its plainly stated terms. *Chiquita Mining Co. v. Fairbanks, Morse & Co.*, 1940, 60 Nev. 142, 104 P.2d 191. We hold that Julien's failure to request in writing an extension of time to complete the contract is fatal to his contention that he should be allowed additional time to complete this contract due to delay caused by the owner. *Herbert & Brooner Construction Co. v. Golden*, Mo.App.1973, 499 S.W.2d 541; *Flour Mills of America, Inc. v. American Steel Buildings Co.*, Okl., 1968, 449 P.2d 861; *Austin–Griffith, Inc. v. Goldberg*, 1953, 224 S.C. 372, 79 S.E.2d 447, 42 A.L.R.2d 1123."

The footnote appended to the above text, found at 597 P.2d 951, 952, is also pertinent. We said:

"The district court found that the parties ignored many, if not most of the provisions of their contract. While parties to a contract are free to do this, they must also understand that they may bear the consequences of such disregard when breach becomes a fact of life. As a general rule, if the parties *mutually* adopt a mode of performing their contract differing from its strict terms or if they *mutu-* *ally* relax its terms by adopting a loose mode of executing it, neither party can go back upon the past and insist upon a breach, because it was not fulfilled according to its letter. See *Detroit Greyhound Employees Federal Credit Union v. Aetna Life Insurance Company*, 1967, 7 Mich.App. 430, 151 N.W.2d 852, 857. Here there was never any *mutual* agreement to vary any terms. There was unilateral disregard of terms. There were terms neither party ever seemed to be cognizant of or understand. However, there was never any *mutual* agreement to do anything different and the parties must be held bound to their agreements. It is in just such instances as this that it becomes most important to read and strictly construe contracts."

Although the appellant in this case does not urge that we disregard the contract, it appears from reading the appellate briefs that both sides have paid only casual attention to the contract. Nonetheless, there is no evidence of a mutual agreement to vary the contract and the trial judge properly resorted to the General Conditions of the contract. E. g., *Quin Blair*, supra.

 Appellant has not drawn our attention to any evidence in the record which contradicts the trial court's statement that appellant never complied with the procedure of Paragraph 37, nor have we discovered any. We hold that the trial judge was correct in holding the appellant legally liable for the days of delay which it did not charge to the appellee.[3]

Affirmed.

---

3. We realize that under the rationale of this opinion, the trial judge could well have found the appellant legally liable for the entire delay. However, since the appellee has not cross–appealed, it would not be proper for us to consider enlarging his judgment.