John BURK, P.C., a Wyoming corporation, Appellant (Plaintiff),

v.

Lawrence F. BURZYNSKI, individually and d/b/a Pinetop Construction, the Carriage Corporation, a Wyoming corporation, and Park Development Ltd., a Wyoming corporation, Appellees (Defendants).

Lawrence F. BURZYNSKI, individually and d/b/a Pinetop Construction, the Carriage Corporation, a Wyoming corporation, and Park Development Ltd., a Wyoming corporation, Appellants (Defendants),

v.

John BURK, P.C., a Wyoming corporation, Appellee (Plaintiff).

Nos. 5819, 5820.

Supreme Court of Wyoming.

Nov. 9, 1983.

Rehearing Denied Dec. 1, 1983.

Jerry A. Yaap of Bishop, Bishop & Yaap, Casper, for appellant in Case No. 5819 and appellee in Case No. 5820.

C.M. Steve Aron of Aron & Hennig, Laramie, Eldon E. Silverman, Denver, Colo., for appellees in Case No. 5819 and appellants in Case No. 5820.

Before ROONEY, C.J., and RAPER * THOMAS, ROSE and BROWN, JJ.

ROSE, Justice.

John Burk, P.C., a professional corporation of practicing attorneys, initiated this action against Lawrence F. Burzynski, individually and doing business as Pinetop Construction, The Carriage Corporation and Park Development Ltd. to recover past-due legal fees plus accrued interest. The de-

---

* Retired June 13, 1983, but continued to participate in the decision of the court in this case pursuant to order of the court entered June 13, 1983.

fendants answered that they were entitled to an offset in the amount claimed by John Burk, P.C., based on their assignment of a cause of action to it and on Burk's failure to conform with various disciplinary rules of the Wyoming State Bar. The defendants counterclaimed for damages incurred as a result of the manner in which Burk represented them in various lawsuits.

The trial court determined that John Burk, P.C. was entitled to a judgment for its legal fees and costs, subject, however, to an offset in the amount of the potential recovery in the claim assigned to it. The court found the evidence to be insufficient to support any of the defendants' counterclaims. The defendants have appealed the award of legal fees and the denial of one counterclaim. The plaintiff has cross-appealed the offset and the denial of prejudgment interest.

We will affirm those portions of the judgment which award recovery of past-due legal fees, and will deny prejudgment interest and defendants' counterclaim. We will reverse that portion of the judgment which allows defendants an offset based on the assignment of a claim. We will remand the case to the lower court to apportion liability among the defendants and to correct an error in computation.

## FACTS

John Burk began representing Lawrence Burzynski and his business enterprise, Pinetop Construction, in August of 1978. Sometime later a decision was made to incorporate the business, and Burk performed the necessary legal services to form The Carriage Corporation. The name of the corporation was subsequently changed to Park Development Ltd.

After the incorporation, Burk continued to represent Burzynski and his business. Pursuant to Burzynski's instructions, Burk billed The Carriage Corporation for all legal services, whether rendered for Burzynski personally or for the corporation. Apparently, all amounts which had been billed to Pinetop Construction before the incorporation were paid. The Carriage Corporation, however, became delinquent in paying the legal fees billed to it, and by March 4, 1981, when this suit was filed, the amount owed to John Burk, P.C. was $30,028.98.

Prior to the incorporation, Burzynski and his wife had obtained two bank loans, which were secured by mortgages on separate parcels of land. This land was subsequently transferred to The Carriage Corporation. In December of 1979, the bank commenced foreclosure proceedings against the properties and Burzynski sought legal advice from Burk regarding the foreclosure process. The sales on the two notes took place on two different dates. The bank's attorneys claimed $5,890 in legal fees for the first foreclosure sale and $21,700 in fees for the second sale.

Following the sales, Burk advised Burzynski of his belief that the bank attorneys had charged excessive fees to conduct the foreclosure sales and had failed to file an affidavit with the sheriff's office regarding fee sharing. Burk informed Burzynski that there was a strong chance of recovering these fees under the Wyoming statute which conditions compensation to the attorney upon his filing of an affidavit disclaiming any division of fees and which permits payment only "for services actually rendered in the foreclosure proceeding." [1]

---

1.  Section 34-4-112, W.S.1977, provides:

    "Whenever an attorney's fee is provided for in any real or chattel mortgage, or the note or notes secured thereby, such attorney's fee shall not be allowed or added to the mortgage debt in any foreclosure by public advertisement and sale, unless it shall appear by the affidavit of an attorney admitted generally to practice in this state representing the mortgagee or his assigns in such foreclosures, or the party instituting such foreclo-

    sure, which affidavit shall be filed with the sheriff or person who shall conduct the sale under such foreclosure, and said affidavit shall state therein that there has been and is no agreement, express or implied, between such attorney and his client, nor between him and any other person except a practicing attorney of this state engaged with him as an attorney in the foreclosure proceeding, for any sharing or division of said fee so to be allowed or added to the debt involved, and

At the time of the foreclosure proceedings, The Carriage Corporation and Burzynski owed John Burk, P.C. approximately $19,000 in legal fees. When it appeared that an opportunity existed to recover close to $28,000, Burk requested that the cause of action against the bank's attorneys be assigned to the professional corporation. On February 28, 1980, Burzynski executed the following instrument:

### "ASSIGNMENT

"I, Lawrence Burzynski, as president of the Carriage Corporation, in consideration of good, valuable and sufficient considerations, the receipt of which is hereby acknowledged, hereby sell, assign, transfer, set over and deliver to John Burk, P.C., (Assignee) of Suite A, The Wyoming Building, Casper, Natrona [County], Wyoming, and its assigns, for its use and benefit, claims, demands and cause of or causes of action against the First National Bank of Casper, Casper, Wyoming, or its assigns to recover $7,000 and $35,000.-00 [2] improperly received by said First National Bank arising out of, or relating to or connected with the foreclosure sale of lot 10–71 and balance of the lots sold on sheriff certificate on 2/8/80 in Paradise Valley which are or were property of the undersigned.

"This assignment is to secure the statutory attorney's lien rights of the Assignee and shall be interpreted as securing and protecting such lien rights and not as an absolute conveyance.

"CARRIAGE CORPORATION
"[/s/ Lawrence F. Burzynski]
"President"

said fee when so allowed or added to the debt shall be only as compensation for services actually rendered in the foreclosure proceeding by an attorney admitted to practice in this state and residing therein. Provided, however, that in the foreclosure of real estate mortgages, this section shall in no wise affect the title to the real estate involved in such a foreclosure."

2. The source of these figures is not clear from the record. The testimony at trial indicated that the bank's attorneys claimed $5,890 and $21,700 to conduct the two foreclosure sales.

Burk then initiated proceedings against the bank, with The Carriage Corporation as the named plaintiff. On December 15, 1980, the trial judge granted the bank's motion for summary judgment. Burk did not appeal this ruling.

The trial court in the present case interpreted the transfer to John Burk, P.C., of The Carriage Corporation's cause of action to be an absolute assignment, rather than an assignment to secure payment of fees. As a result, the court reduced its award to John Burk, P.C. of $30,028.98 in legal fees by the potential value of the claim against the bank's attorneys at the time of the assignment.[3] Additional facts which are pertinent to this appeal will be developed during our discussion of the issues presented by the parties.

### ISSUES

The following issues are before the court in this appeal:

1. Whether the assignment of the cause of action to John Burk, P.C., was an absolute assignment in lieu of attorney's fees or whether the assignment created an interest in the cause of action to secure payment of attorney's fees;

2. Whether, as a matter of law, John Burk, P.C. is entitled to prejudgment interest on the past-due legal fees;

3. Whether there were instances of violations of the Code of Professional Responsibility, as adopted by the Wyoming Supreme Court, which bar recovery of any legal fees claimed by John Burk, P.C.;

3. The court reduced the amount awarded to John Burk, P.C. by $21,700, which represented the fees claimed by the bank's attorneys in the second foreclosure sale. Apparently, the court's failure to deduct $5,890, the amount claimed by the attorneys in the first sale, was an oversight. The court reduced the award by an additional $2,200 to reflect an amount paid by the defendants, but not credited to their account. This offset is not contested on appeal. A further reduction of $7.50 for unnecessary legal services resulted in a net award to John Burk, P.C. of $6,121.48.

4. Whether Burzynski is personally liable for the legal fees claimed by John Burk, P.C.; and

5. Whether the defendants are entitled as a matter of law to damages arising out of Burk's failure to file a cross-appeal in *Keith v. Burzynski,* Wyo., 621 P.2d 247 (1980).

I

The trial court relied on extrinsic evidence to conclude that the assignment of the cause of action to John Burk, P.C. was absolute and in lieu of attorney's fees to the extent of potential recovery at the time of the assignment. The court based its conclusion primarily on a letter in which Burzynski questioned Burk's failure to credit the defendants' account as a result of the assignment. Apparently, Burk never objected to this interpretation of the assignment by Burzynski.

■ This court has often said that the meaning of an instrument is to be deduced solely from its language if the terms are plain and unambiguous. *Bowen v. Korell,* Wyo., 587 P.2d 653, 656 (1978); *Craig v. Gudim,* Wyo., 488 P.2d 316, 319 (1971); *Barlow v. Makeeff,* 74 Wyo. 171, 284 P.2d 1093, 1097 (1955). The intent of the parties may be determined by resort to extrinsic evidence only when the language is ambiguous. *Amoco Production Company v. Stauffer Chemical Company of Wyoming,* Wyo., 612 P.2d 463, 465 (1980); *Bowen v. Korell,* supra. An ambiguous writing is one which is obscure in its meaning because of indefiniteness of expression or because more than one meaning is possible. *Amoco Production Company v. Stauffer Chemical Company of Wyoming,* supra. Whether an ambiguity exists is a question of law to be determined by this court. *Schacht v. First Wyoming Bank, N.A.—Rawlins,* Wyo., 620 P.2d 561, 563 (1980); *Amoco Production Company v. Stauffer Chemical Company of Wyoming,* supra.

4. By Rule 20 of the Amended Rules Providing for the Organization and Government of the Bar Association of the Attorneys at Law of the

■ Here the language of the document is exceedingly clear:

"This assignment is to secure the statutory attorney's lien rights of the Assignee and shall be interpreted as securing and protecting such lien rights and not as an absolute conveyance."

No ambiguity exists as to the extent of the interest that the defendants intended to assign to John Burk, P.C. Therefore, any reliance on evidence other than the document itself to determine the intent of the parties is not permitted. We conclude that the purpose of the assignment was to create a security interest in a cause of action owned by The Carriage Corporation for the payment of legal fees owed to John Burk, P.C.

Notwithstanding the foregoing rules of construction and the plain language of the written document, defendants would have us look to extrinsic evidence in this case to find an absolute assignment. They argue that an examination of extrinsic evidence is appropriate since any contract between an attorney and his client is inherently suspect and, therefore, subject to the closest scrutiny by the courts.

■ We agree that were we to hold that the writing in this case effected an absolute assignment, it might be inherently suspect and subject to invalidation. However, we see nothing wrong with an assignment which creates a security interest in specified collateral in favor of an attorney for payment of his fees. The Code of Professional Responsibility,[4] in DR 5–103(A) provides as follows:

"A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, except that he may:

"(1) Acquire a lien granted by law to secure his fee or expenses; * * *"

By statute, Wyoming grants to attorneys a lien for payment of their fees. Section 29–1–102, W.S.1977, provides:

State of Wyoming, this court adopted the Code of Professional Responsibility.

"(a) For professional services performed on behalf of a client, an attorney shall have a lien for compensation due him from the time of giving notice of the lien. The attorney's lien attaches upon:

"(i) Any papers or money of his client which have come into his possession;

"(ii) Money due his client and in the possession of an adverse party."

The statute expressly states that the lien attaches to sums due a client and in the possession of an adverse party.

In *Anderson v. Star-Bair Oil Co.*, 34 Wyo. 332, 243 P. 394 (1926), this court held that, by virtue of the statute, an attorney holds a lien upon a judgment obtained by his efforts. This court considered the question of a lien upon a cause of action in *Enos v. Keating*, 39 Wyo. 217, 271 P. 6, 67 A.L.R. 430 (1928). While the contingency-fee arrangement at issue there did not establish a lien upon a claim, the case implied that such liens would be valid if created in properly drafted contracts. *Enos v. Keating*, supra, 271 P. at 7–8. The statutory lien upon a claim is not limited to securing payment of the fees attributable to that particular claim. Rather, the extent of the lien depends upon the nature of the contract between the attorney and the client. See *Stearns v. Wollenberg*, 51 Or. 88, 92 P. 1079, 1081 (1907); *In re Heinsheimer*, 214 N.Y. 361, 108 N.E. 636, 638 (1915). We conclude that the assignment, in plain terms, created a security interest for payment of past-due legal fees and that such an agreement is valid under the Code of Professional Responsibility, § 29–1–102, supra, and our prior decisions. As we said in *Morfeld v. Andrews*, Wyo., 579 P.2d 426, 433 (1978), a case in which the client questioned her attorney's right to assert a lien for payment of fees:

"We do not know how there can be a breach of fiduciary duty in the assertion of a legal right."

5. Section 40–14–106(e), W.S.1977, of the Wyoming Uniform Consumer Credit Code provides as follows:

In view of our holding that the assignment created a security interest, we do not reach defendants' argument that an absolute assignment of a cause of action is inimical to the attorney-client relationship and a bar to recovery of legal fees.

II

■ This court considered the prerequisites to a recovery of prejudgment interest in *Rissler & McMurry Company v. Atlantic Richfield Company*, Wyo., 559 P.2d 25 (1977). There we said that

"interest is recoverable on liquidated but not on unliquidated claims [and] a claim is considered liquidated when it is readily computable by simple mathematical computation." 559 P.2d at 31.

We said further that even though the existence of an unliquidated counterclaim or set-off put the amount owed in doubt, it did not render the claim itself uncertain. The debt would be deemed liquidated so long as it could be calculated from accurate statements submitted by the claimant. Furthermore, there need not be a contract between the parties which establishes the rate of interest to be awarded. In the absence of such a contract the court may award prejudgment interest payable at the statutory rate of seven percent.[5]

■ In this case a series of charges were assessed against The Carriage Corporation account during August, 1980, for unnecessary legal services. The charges were for work done by Burk to obtain a default judgment after he had agreed to give opposing counsel an extension of time. As a result of these erroneous charges, totaling approximately $700, the defendant-obligors were unable to compute from the submitted statements the precise amount owed to John Burk, P.C. Therefore, we hold that the claim for legal fees was unliquidated and recovery of prejudgment interest must be disallowed.

"If there is no agreement or provision of law for a different rate, the interest of money shall be at the rate of seven percent (7%) per annum."

## III

Defendants argue that there were several instances of violations of the Code of Professional Responsibility by Burk, which should bar any recovery of attorney's fees by him. Specifically, defendants direct our attention to (1) a failure to preserve the confidential attorney-client relationship; (2) the continued representation of the defendants when the attorney's independent professional judgment was impaired; and (3) a failure to represent the client competently and zealously.

The trial court made no express findings as to these affirmative defenses raised below. However, we have said in the past that a general finding and judgment for the successful party carries with it every finding of fact which can reasonably and fairly be drawn from the evidence. *Peters Grazing Association v. Legerski,* Wyo., 544 P.2d 449, 455 (1975), reh. denied 546 P.2d 189 (1976). It is our duty as an appellate court to examine the evidence in a light most favorable to the prevailing party and to resolve all conflicts in the testimony and exhibits in his favor. *True v. Hi-Plains Elevator Machinery, Inc.,* Wyo., 577 P.2d 991, 996 (1978). Unless clearly erroneous, the findings of the trial court will not be disturbed on appeal. *True v. Hi-Plains Elevator Machinery, Inc.,* supra, 577 P.2d at 996, and cases cited therein. Keeping in mind these basic rules which define the appellate court's role when reviewing findings of fact, we will consider separately the violations of the Code of Professional Responsibility which defendants contend should bar recovery.

### Breach of the Confidential Attorney-Client Relationship

It is undisputed that after representation of the client had ceased, Burk filed an affidavit in the action of Linda Sue Irvine v. R.F. Crotteau, Lawrence Burzynski, and Park Developments Ltd. a Wyoming limited corporation, Civil Action No. 52493 in the

District Court, Seventh Judicial District, Natrona County, State of Wyoming. In the affidavit, Burk stated that Burzynski had transferred real property to his stepdaughter, R.F. Crotteau, to avoid his creditors. The record reveals, however, that Burzynski himself made the same statement to Linda Irvine, who filed an affidavit a month earlier than the Burk affidavit. In addition, Burk testified that he received the information from public records and sources other than his client.

The Code of Professional Responsibility, DR 4–101, provides in pertinent part:

"Preservation of Confidences and Secrets of a Client.

"(A) 'Confidence' refers to information protected by the attorney-client privilege under applicable law, and 'secret' refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.

"(B) Except when permitted under DR 4–101(C) [not applicable in the present case], a lawyer shall not knowingly:

"(1) Reveal a confidence or secret of his client;

"(2) Use a confidence or secret of his client to the disadvantage of the client;

"(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure; * * * "

Defendants contend that Burk violated his ethical obligation to guard the secrets and confidences of his client.[6] This ethical precept, in contrast to the evidentiary attorney-client privilege, exists without regard to the source of the information or the fact that others share the knowledge and continues after termination of the employment relationship. Code of Professional Responsibility, EC 4–4 and EC 4–6.

It appears that Burk, by submitting in a civil action an affidavit which was

---

6. Defendants do not argue that Burk violated the attorney-client evidentiary privilege which is created by § 1–12–101, W.S.1977, and precludes, with certain exceptions, an attorney from testifying concerning communications made to him by his client.

detrimental to Burzynski, violated his ethical duty to refrain from revealing secrets concerning his former client. We believe, however, that Burzynski, by revealing the damaging information to others, waived any right he may have had to withhold payment of legal fees. We do not hold that an attorney may disclose confidences and secrets of his client with impunity and still expect to recover his fees. We merely hold that recovery is not barred in this case, where the client himself revealed the same information that his attorney subsequently revealed and where the client's disclosure resulted in an affidavit duplicative of the one filed by the attorney.

Counsel for the defendants cite to us a number of cases in support of their contention that an attorney who breaches his ethical duties to his client will be denied recovery of fees. These cases are readily distinguishable from the instant situation on their facts. In *In re Thomasson's Estate,* 355 Mo. 274, 196 S.W.2d 155, 162, 170 A.L.R. 1170 (1946), the Missouri Supreme Court denied recovery of fees where the attorney was involved in an unlawful conspiracy to obtain his client's property by fraud, undue influence, force and duress. The Pennsylvania Supreme Court in *Duffy v. Colonial Trust Co.,* 287 Pa. 348, 135 A. 204, 205, 49 A.L.R. 406 (1926), determined that an attorney, who attempted to obtain a continuance by suggesting that a material witness feign illness, acted in bad faith toward the court as well as toward his client. Had the client known of such conduct, it would have had a duty to discharge the attorney. Therefore, recovery of legal fees was denied.

In oral argument, counsel for defendants relied on *Goldstein v. Lees,* 120 Cal.Rptr. 253, 254, 46 Cal.App.3d 614 (1975). In that case, a former corporate attorney, who held confidences and secrets of the corporation, entered into a contract to provide legal services on behalf of a minority shareholder and director in a proxy fight designed to gain control of the same corporation. The California Court of Appeals held that, under the circumstances, the contract was void for reasons of public policy. In another case cited to us by defendants, the court awarded the attorney reasonable compensation even though the employment contract was "champertous" and "against public policy," *Donaldson v. Eaton & Estes,* 136 Iowa 650, 114 N.W. 19, 21 (1907). Finally, in a recent California case, the court permitted an attorney to recover fees for his services rendered up to the point at which a conflict of interest developed, *Jeffry v. Pounds,* 136 Cal.Rptr. 373, 376–377, 67 Cal.App.3d 6 (1977). We conclude that the foregoing cases, involving voidable employment contracts, fraud, and conflict of interest, do not adequately address the attorney's revelation of a client's secret following disclosure by the client. Therefore, these cases will not control our decision here.

*Impairment of Professional Judgment*

Defendants argue that Burk violated DR 5–101(A) and DR 2–110(B)(2) by continuing to represent them despite the opposition of his office staff and despite his own inclination to withdraw. DR 5–101(A) provides:

"Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests."

DR 2–110(B)(2) mandates withdrawal when an attorney

"knows or it is obvious that his continued employment will result in violation of a Disciplinary Rule."

We do not believe that the above disciplinary rules prescribe an attorney's conduct when his office staff objects to representing a client who is not paying his bill. As to Burk's own inclinations, the record indicates that he attempted to withdraw, contingent upon arranging substitute counsel. Such conduct comports with the standards of the legal profession designed to protect the client. See DR 7–101(A)(2).

*Competent and Zealous Representation*

The defendants fault Burk for the manner in which he pursued the action

against the bank's attorneys to recover the fees which they asserted in connection with the foreclosure sales. Defendants argue that Burk's handling of the case constituted a violation of his duty to represent his client competently and zealously. The testimony of Burk and the exhibits support the trial court's rejection of this argument.

## IV

■ The trial court awarded a judgment for payment of legal fees against Burzynski as well as against the corporate client. We are unable to discern any basis for holding Burzynski personally liable for payment for legal services provided to the corporate client. There is no indication that Burzynski agreed to be responsible for the fees generated by these services. Burk has not urged this court or the trial court to disregard the corporate veil in order to hold Burzynski liable, and we do not address that question.

■ In a similar fashion, we find no basis for holding the corporation liable for legal fees attributable to services rendered to Burzynski personally or to Pinetop Construction, his unincorporated business. The record indicates that charges for a will, a criminal action, and Pinetop Construction litigation were billed to The Carriage Corporation account pursuant to Burzynski's instructions. In view of the fact that fees for distinct entities were charged to a single account, we will remand to the trial court with instructions to apportion liability between The Carriage Corporation and Burzynski.

## V

The trial judge stated in his opinion letter concerning this case:

"The Court does not find sufficient evidence to find for the Defendant on any counterclaim. In some cases handled by Mr. Burk he may have made errors in judgment, but in retrospect it is easy to second guess Mr. Burk or surmise what another attorney may or may not have done under similar circumstances. The Defendant did not produce any expert witness with which to compare or set a standard of conduct to assist the Court in assessing the Plaintiff's competence in his handling of the various cases set out in the counterclaims. Certainly, there was an area of contributory negligence on the part of the Defendant who in case after case continued to use the services of Mr. Burk and accepted his legal advice."

Defendants contend that they are entitled as a matter of law to damages in the amount of $2,700, incurred as a result of Burk's failure to file a cross-appeal in *Keith v. Burzynski,* supra, 621 P.2d 247. Burk testified that it was his best professional judgment not to cross-appeal because to do so would have meant impeaching the line of cases that he relied on at trial and during the appeal. Burk also testified that the expense of cross-appealing would have exceeded the amount involved.

■ We agree with the courts in other jurisdictions which have declined to find a cause of action against an attorney arising out of the manner in which he honestly chooses to present his case. *Gonzalez y Barredo v. Schenck,* D.C.N.Y., 287 F.Supp. 505, 523 (1968); *Stricklan v. Koella,* Tenn. App., 546 S.W.2d 810, 814, cert. denied (1976). The record supports a finding that Burk's decision not to cross-appeal was based on his honest assessment of the merits of such an appeal. We refuse to disturb this finding.[7]

Finally, defendants contend that the trial court erred in computing the amount of the offset attributable to the unnecessary legal services performed by Burk. See n. 3, su-

---

**7.** We do not agree with defendants' contention that the absence of an expert witness improperly controlled the court's decision as to this counterclaim for damages. Defendants had requested a third continuance six days before trial to locate an expert witness. Their request was denied. Even if this denial were an abuse of the court's discretion, which it was not, the trial judge appears to have made an independent finding of fact, supported by the record, that Burk's decision not to cross-appeal reflected an honest exercise of professional judgment.

pra. This issue is not contested on appeal. All parties agreed in the proceedings below that Burzynski should receive a credit for those erroneous charges assessed during August, 1980, which were itemized in Defendants' Exhibit B. Therefore, we instruct the trial court on remand to correct the amount of offset accordingly.

To summarize our disposition of this appeal, the award to John Burk, P.C. of $30,028.98 in legal fees will be allowed to stand. Since we have interpreted the assignment of the claim against the bank's attorneys as creating a security interest, and since the claim was unsuccessful, the assignment has no effect on the judgment. The award shall be reduced, however, by the sums paid by defendants, but not credited to their account, and by the erroneous charges assessed in August, 1980.

Affirmed in part, reversed in part, and remanded with instructions.